Gene Forte
901 N. Carpenter Rd, Ste 32, #122
Telephone: (209) 622-0685
Email: geneforte@badgerflats.com
In Propria Persona /Plaintiff

**RECEIVED**

FEB 1 1 2014

IN THE UNITED STATES DISTRICT COURT
CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
FOR THE EASTERN DISTRICT OF CALIFORNIA

**FILED**

DEPUTY CLERK

FEB 11 2014

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK

EUGENE E. FORTE,                     )  CASE NO.   1:13-cv-01980-LJO-SMS
                                     )
          Plaintiff                  )  *Amended Complaint*
                                     )
          vs.                        )  § 1983. Civil action for deprivation of
                                     )  rights
                                     )
Patterson Police Services/Stanislaus County )  § 1611.5. Deprivation of civil rights by
Deputy Chief Tori Hughes, Stanislaus County )  police officer
Deputy Chris Schwartz, Stanislaus County )
Sheriff Adam Christianson, in their public and )
individual capacity, Patterson Police Services, )
Stanislaus County Sheriff's Department,  City of )  **FILED:  December 3rd, 2013**
Patterson, Patterson Police Services, et al, and )
Does 1-100                           )
                                     )
                                     )
                                     )
                                     )
                                     )
                                     )
                                     )

Plaintiff, Eugene E. Forte, alleges:

## I.      Introduction

1. Plaintiff EUGENE FORTE brings this action against individual police officers, supervisors,

and Stanislaus County for damages arising out of a beating, other unconstitutional policies and

actions, and common law claims arising out of an unlawful stop by defendant police on

December 3rd, 2013.

## II.      Jurisdiction

2. Plaintiff brings this action against defendants to redress the deprivation of rights secured plaintiff by the First, Fourth, and Fourteenth Amendments to the United States Constitution, 42 U.S.C. § 1983, and the common law.

3. Plaintiff is a citizen of *California*. Each defendant is, upon information and belief, a citizen of *California*. The matter in controversy exceeds *$1,000,000.00*.

4. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1332, and 1343(a)(3), and 42 U.S.C. § 1983.

5. Plaintiff also invokes supplemental jurisdiction of this Court over plaintiff's state claims against defendants for common law violations pursuant to 28 U.S.C. § 1367 as the common law claims form part of the same case or controversy.

6. Venue is proper in this District pursuant to 28 U.S.C. § 1391.

### III.    Parties

7. Plaintiff is a resident of California.

8. Defendant Stanislaus County operates and governs the Patterson Police Services pursuant to the laws of California.

9. The City of Patterson Police Services was consolidated into the Stanislaus County Sheriff's Department resulting in the formation of Patterson Police Services of the Stanislaus County Sheriff's Department.

10. Defendant Officers Patterson Police Services Officer/Stanislaus County Deputy Christopher Schwartz, Patterson Police Services/ Stanislaus County Sheriff's Deputy Chief Tori Hughes, and Stanislaus County Sheriff Mark Christianson, are sued both individually and in their official/public capacities. At all pertinent times, defendant officers and supervisors were employed by Stanislaus County Sherriff's Department under contract by the Patterson Police Services.

11. Defendant Deputy Chief Tori Hughes was at all times the employer and supervisor of Defendant Schwartz and Deputy Randy Watkins and all other officers of the Patterson Police Services.

12. Defendant Stanislaus County Sheriff Mark Christianson was the employer and supervisor of Defendant Deputy Chief Tori Hughes and other officers of the Sheriff's Department and Patterson Police Services.

13. At all pertinent times, defendants acted under color of law, of a statute, ordinance, regulation, custom, or usage.

## IV. FACTS

14. On or about March 2013 notice was given to Stanislaus County.  This notice set forth the facts underlying plaintiff's claim against Patterson Police Services/ Stanislaus County Sheriff's and its agents. The claim was rejected in April 2013.

15. Plaintiff is the publisher of the Badger Flats Gazette that specializes in reporting upon public corruption by judicial officers, public officials and police officers, and past candidate for Governor of California in 2003 running on the platform of exposing public official/judicial corruption.

16. In March 2009 plaintiff filed a complaint with the California Fair Political Practices Commission against then Los Banos Mayor Tommy Jones (an African American) that concluded with Jones being found to have broken disclosure of money received from a developer, and breaking conflict of interest laws by voting on annexations of the developer while receiving undisclosed "loans".

17. In April 2009 plaintiff organized a Recall of Jones, and had written about Jones arrest for crack cocaine in 1999 when a Los Banos City Councilman in the Badger Fats Gazette which was distributed throughout Merced County.

18. In May 2009 Forte sued Jones for defamation and slander for telling people that Jones knew for a "fact" that Forte was a dangerous member of the Ku Klux Klan and after Jones told that to Clinton E. Galloway, a fellow African American, that has been Forte's best friend for 40 years, and best man to the wedding of Forte to his Chinese American wife. Galloway signed a sworn declaration stating that is what he was told by Jones.

19. In January 2010 the FPPC issued the warning letters to Jones based upon Forte's complaint.

20. On February 24th, 2010 Forte received death threats in the form of emails from a juvenile, Anthony Donaldson Bates, who was a student of Jones, and fellow parishioner of Jones. Bates said the threats were made for the "honor, love, and respect of his Mayor, close family friend and teacher, Mayor Jones". Forte and his family suffered damages and Forte obtained a judgment against Bates in February 2013 before the Honorable Merced Superior Court Judge Ronald Hansen. Deputy Watkins in his investigation said that the threats from Bates were clearly violations of PC 422 Felony, and that they should have been brought to the DA for action in Merced County by the Los Banos PD.

21. On March 3rd, 2010, Forte was prevented from going into the Los Banos City Council meeting to speak at the open microphone by then Los Banos Police Commander Gary Brizzee saying that a TRO Forte was served with when he was about to go into the City Hall prevented him from being within 200 yards of Jones.

22. In July 2010 plaintiff and his family moved from Los Banos, California in Merced County to Patterson, California in Stanislaus County, primarily out of concern for the safety for his family that Jones who was a Los Banos High School teacher.

23. In July 2010 Plaintiff and his wife met with Patterson Police Services Chief Tori Hughes to introduce themselves and explain they were embroiled with Merced County Officials. Forte and his wife told Hughes that they had received what they considered death threats from Bates that law enforcement had not arrested. Forte and his wife told Hughes they were concerned if

Bates or some of his friends would seek to harm Forte in further retribution for the lawsuit he had filed against Bates and his mother, which also alleged Bates was put up to giving the death threats to Forte by Jones, his "mentor and teacher."

24. Hughes told Forte and his wife that if law enforcement in the adjoining Merced County was not addressing law enforcement issues against themselves that plaintiff could go to Stanislaus County as plaintiff was doing to report it.

25. On February 24th, 2011, plaintiff filed the lawsuit of *Forte v. DA Larry Morse, Merced County, et al.*, 1:11-cv-00318-AWI-BAM in the Eastern District Federal Court.  The case is still pending with amendments, new causes of action, and additional does being added by January 31st, 2014.

26. Plaintiff at the time was being prosecuted in Merced Superior Court by DA Morse, and the civil lawsuit was put on stay pending the outcome of the criminal prosecution of CRL001412 & CRL003409.

27. On May 4th, 2011 Plaintiff reported to Patterson Deputy Sheriff Randy Watkins that he was falsely arrested, and being retaliated (CRL001412 $ CRL003409) against by Merced County police officers and public officials for reporting upon public corruption by Merced County District Attorney Larry Morse and filing a complaint with the California Fair Political Practices Commission that determined Mayor Tommy Jones was taking undisclosed loans from a developer by the name of Greg Hostetler of Ranchwood Homes and breaking conflict of interest loans by voting on annexations issues for Hostetler.   All of the conversations between Watkins and plaintiff were recorded with Watkins knowledge.

28. Plaintiff reported to Deputy Watkins that Merced County Grand Juror Annette Tomsha, who was a juror of the Merced County Grand jury investigating the false arrest of Forte, was instructed by Merced County Counsel James Fincher, that the Merced County Grand Jury

investigation had to be terminated. Fincher was one of the individuals, along with Merced

County DA Larry Morse and Merced County Sheriff Mark Pazin, who were being investigated.

29. On July 7th, 2011 Deputy Watkins provided a copy of his completed investigation of Forte's

complaint and found that there was evidence of Grand Jury Tampering by Fincher and that the

Merced County Police Officer had lied in their police reports of the arrest of Forte by

comparing them to audio recordings of Fortes' arrest. Watkins explained the results of his

police investigation with Forte in a recorded conversation. Bates emails would be considered a

PC 422 Felony death threats, etc..

30. On May 16th, 2012, Deputy Watkins was served a subpoena by plaintiff's Stanislaus County

criminal defense attorney Larry Cole to be called as a witness in the Merced County criminal

case of the State v. Forte CRL001412 & CRL003409.

31. On September 10th, 2012, plaintiff contacted Deputy Watkins and reported that the retaliations

against him by Merced County public officials had escalated and that a Merced County

Sheriff's Citizen Complaint that Forte had filed in 2009 had gone missing concerning his false

arrests. Forte was reporting that Dumars was acting irrationally by attempting to have Forte

declared mentally incompetent when he was not, and thought that Dumars was a danger to

Forte, and on drugs. Forte advised Merced County Administrator Larry Coombs on October

10th, 2012 that it appeared that Dumars could be a danger to himself and others, and that

Dumars was retaliating against Forte for exposing to other attorneys, what Dumars was doing

with DA Morse to conceal the baseless retaliatory prosecution of Forte

32. Plaintiff explained to Deputy Watkins that California Licensed Private Investigator Warren

Yates had attempted to file a complaint with the Merced County DA concerning the false

statements by police officers in the arrest report of Forte and that he was ignored by them.

Watkins said that he would be discussing the matter with Chief Tori Hughes to see how she

wanted him to proceed.

33. Forte had told Deputy Watkins that he was going to be recording his conversation as he had done all of the other calls with Deputy Watkins. Deputy Watkins told Forte that he had been instructed by Chief Tori Hughes that the Patterson Police Services as policy does not permit their activities in the performance of their duties to be recorded. Forte told Watkins that for Forte's safety the call would be recorded and they continued to speak.

34. On September 11th, 2013 plaintiff contacted Chief Tori Hughes asking that she provide him with a written copy of the Patterson Police Services policy that prohibited Forte, and other citizens from recording Patterson Police Services officers in the performance of their duties.

35. On September 14th, 2012 plaintiff sent by email a letter to Chief Tori Hughes recapping that Deputy Watkins found there was evidence of Merced County Grand Jury Tampering by Merced County Counsel James Fincher of plaintiff's Grand Jury Complaint that focused upon the false arrest, which was also connected to the missing 2009 Merced County Sheriff's Citizen Complaint filed by Forte. Copies of the letter were sent to Merced County DA Chief Investigator Patrick Lunney, Merced County Undersheriff Thomas Cavallero, T. Maggio, DOJ/OIG Michael Barranti, California Attorney Kamala Harris, Assistant Deputy AG Michael Farrell, Merced Police Lieutenant Matt Williams, Merced County Counsels Roger Matzkind and James Fincher.

36. On September 18th, 2012, plaintiff sent an email to Chief Tori Hughes asking that he be provided the status of the police report he had filed with Deputy Randy Watkins on September 10th, 2012 concerning what he alleged were unlawful activities by Merced County officials against him to have Forte declared mentally incompetent (when he was not) to conceal DA Morse, Dumars, Pazin and Fincher/Matzkind's unlawful acts done to Forte under the color of law and authority. There was no response from Hughes.

37. Plaintiff provided to Chief Hughes a copy of a Minute Order of September 17th, 2013 signed by Merced Superior Court Judge James Cadle that ordered a mental evaluation of plaintiff at

the request of Acting Merced County Public Defender Eric Dumars (Forte's own attorney) over the objection of plaintiff.

38. By Hughes not taking department action as a law enforcement officer and not responding to Forte or providing him equal protection under the law, she was propagating an attitude and policy among the officers, such as defendants Schwartz, that it was okay not to respond to Forte, it was okay for Forte to be thrown down in the streets, and it was not okay for Forte to be recording officers in the performance of their duty notwithstanding that it was his First amendment Right to do so.

39. Hughes knowingly set in motion a series of acts, such as the officers on the morning of December 3rd, 2013 telling Forte they were not to be recorded to Schwartz lunging at Forte on the evening of December 3rd, 2013 in an attempt to seize Forte's digital recorder, leading to his false arrest, humiliation and harm, that inflicted constitutional injury and other injury on plaintiff.

40. Forte had made Christiansen, the superior of Hughes and Schwartz, aware by several letters, and the delivery of court documents and other evidence (i.e., legally recorded statements by DA Larry Morse), of the denial of equal protection under the law and the unlawful activities against him by Merced County DA Larry Morse and what Forte refers to as the Morse cabal,. Forte asked for Stanislaus law enforcement assistance because he was being ignored by other law enforcement not responding to him or to licensed private investigator Warren Yates who had been hired by Merced County and Stanislaus County Attorney Larry Cole to defend Forte in the Merced County criminal actions.

41. In May 2012, Cole was fired by Merced County Superior Court when he submitted a letter to the court saying that DA Larry Morse and ADA Alan Turner were trying to intimidate him to abandon Forte before trial.

42. In August 2012, Dumars fired Yates when his investigative report revealed gross police misconduct, prosecutorial misconduct and defense misconduct.

43. This information and evidence was included in the documents presented to Christianson, but there was no response from him.

44. Christianson and Hughes joined in a conspiracy to aid the Merced County public officials' unlawful acts upon Forte by ignoring that their own Sergeant Randy Watkins had affirmed that Forte was being retaliated against by Merced County law enforcement, and that there was evidence of false police reports and Merced County Grand Jury tampering of Forte's 2011 complaint against DA Morse, Sheriff Mark Pazin, Merced Counsel James Fincher, McClatchy Newspapers and others.

45. Hughes with the ratification of Christianson directed Schwartz and other officers on the Patterson Police Services to treat Forte in a different way than other citizens, such as depriving him of his constitutional right to record them in the performance of their duties.

46. Christianson, Hughes, Schwartz and Watkins came to an agreement as to how they were to handle Forte in a way to make it difficult and/or impossible to obtain a copy of the September 10th, 2013 police report concerning the malicious abuse of process culminating in the governmental abuse of psychology to keep the assault by Dumars, Morse and Cadle upon Forte concealed.

47. The letter of September 18th, 2013 to Chief Hughes also had attached a letter of September 18th, 2012 to Judge Cadle explaining the gross procedural anomalies of initiating the competency proceedings at the request of Eric Dumars without any "substantial evidence" presented as to why it was needed.   Plaintiff informed Chief Hughes that he had not yet had any response from phone calls left with dispatch and at the Patterson Police Services from Deputy Watkins.

48. On September 27th, 2012 after not having any responses from Chief Hughes or Deputy Randy Watkins concerning the status of obtaining a written police report of September 10th, 2012 of

plaintiff filed with Deputy Watkins, plaintiff sent an email and fax to Chief Tori Hughes and Deputy Watkins. There was no response from Chief Hughes or Deputy Watkins.

49. On November 2nd, 2012, plaintiff sent a letter to Chief Hughes again requesting that either Deputy Watkins or Chief Hughes contact him. The letter had attached a link to a blog at the Badger Flats Gazette titled "Stanislaus DA Birget Fladager Back Dates Letter." There was no response to the letter from DA Fladager, or Chief Hughes of Deputy Watkins.

50. On the morning of December 3rd, 2012, plaintiff attempted to contact the Fresno FBI Office and was hung up on by the receptionist 12 times when he informed her that for his protection the call was being recorded. Plaintiff had previously recorded conversations with the Fresno Office FBI Agent Robinson who told plaintiff it was "his right to do so (record)". Plaintiff forwarded copies of those recorded conversations with Robinson to other FBI Offices and to the Department of Justice evidencing that he had been told by the FBI that US Attorney Ben Wagner instructed them not to investigate any criminal activity of Merced County officials done under the color of law of state law to plaintiff.

51. Plaintiff then contacted the Patterson Police Services and requested that a police incident be logged concerning the conduct of the FBI. Two Patterson Police Services Officers came to Forte's home and said they were not agreeing to have the conversation between them recorded outside the doorway of Forte's home

52. Forte explained to them that it was *for Forte's protection* in that he did not want anyone stating that Forte was making any kind of threats but wanted to document that the FBI was repeatedly hanging up the phone on him, then putting on their answering machine, when he was trying to report what he considered was the criminal activity of the Merced County officials that has been on-going.

53. Forte explained to the Patterson Police Services Deputies that were named and reported for the incident report that he had not had any response from Deputy Randy Watkins or Chief Tori

Hughes, to which they replied they could do nothing about it. Upon the officers leaving, they were laughing and mocking plaintiff as they walked away while Forte was trying to call them back. One officer raised his hand, without turning around to face Forte, and waved a backward "bye-bye'" like a child would.

54. On December 3rd, 2012, plaintiff was driving with his wife Eileen Forte to the Patterson Post Office located at 50 N. Salado Avenue, Patterson, CA. 95363 at approximately 8:45PM to pick up their mail. Plaintiff noticed a Patterson Police car in front of him, and was aware that Patterson Police Services Officer Randy Watkins usually worked the night shift. Plaintiff flashed his car lights from high to low indicating that he wanted the officer to stop. The officer turned his vehicle around and yelled out of his window for Forte to come to a stop along the curb so they could speak.

55. Plaintiff and his wife got out of their car and so did the officer, who recognized Forte and identified himself as Officer Schwartz who Forte had remembered as taking a report of threats by a person from Monterey County, against Forte, his children, their school, and Forte's neighbors.

56. Forte had a small handheld digital audio recorder in his right hand with a red light on recording the discussion with Schwartz. Schwartz knew that he was being recorded on audio by Forte and on cell phone video by plaintiff's wife, Eileen Forte, also evidenced by Schwartz's attempt to grab the recorder out of Forte's hand and Forte verbally telling his wife to take the recorder so Schwartz could not grab it.

57. Plaintiff asked Schwartz if he knew if Deputy Randy Watkins was on night shift with him to which Schwartz replied brashly, in a rude tone, that he did not know if Watkins was on duty or not and asked how he could help.

58. Plaintiff explained that he had been leaving messages for Watkins with police dispatch and Chief Hughes but that there had not been any return calls. Schwartz told Forte Watkins was

under specific instructions by Chief Hughes when plaintiff called as to how to handle "that" and that Forte had to speak to Watkins. Watkins was under specific instructions as to how to deal with Forte about the matter concerning the police report since September 10th, 2012.

59. Schwartz told Forte that if it had to do with the things in Merced County, Forte would have to speak to Deputy Watkins directly about "that" because Watkins had been given specific instructions as to how to handle it.

60. Deputy Schwartz, in an insulting combative tone, said that he was "aware of all of the nonsense." The exchange continued with Schwartz becoming more insulting and mocking with Schwartz getting back into his patrol car while Forte was still asking for Schwartz to explain what "nonsense" was he aware of.

61. Schwartz then, in a rude, mocking and insulting tone of voice, told Forte that he should understand why Chief Hughes and Deputy Watkins had not called back, that it was not because they were not doing their job but because it was not a law enforcement matter.

62. Schwartz told Forte in a ridiculing tone that the FBI was not going to help him, the DA was not going to help him and they weren't going to help him. Schwartz operating under the instructions of Hughes to humiliate, ignore and trivialize Forte.

63. Schwartz told Forte with prodding hyperbole[1] that if Forte's problem was with law enforcement, why did he keep coming back to them? He was communicating to Forte that Forte was not going to receive any response, help, or action from law enforcement so Forte may as well give up.

64. Forte responded back with political hyperbole[2] saying clearly, "What would you want me to do? Get a gun and shoot you guys? I'm certainly not going to do that! "

---

[1] Definition – "A figure of speech in which exaggeration is used for emphasis or effect."
www.thefreedictionary.com
[2] Threats of Violence Against Individuals.—The Supreme Court has cited three "reasons why threats of violence are outside the First Amendment": "protecting individuals from the fear of violence, from the disruption that fear engenders, and from the possibility that the threatened

65. Schwartz who was sitting in his car then opened the door against Forte bumping him backward. Forte had backed away by about 10 feet and asked Schwartz why he did that? Schwartz did not respond. Forte then asked again what Schwartz was doing.

66. Schwartz then leaped (without warning) at Forte grabbing the recorder in Forte's hand. Forte did not resist and only tried to protect himself from being knocked over telling Schwartz not to try and take Forte's recorder. Forte was able to hand the recorder to his wife.

67. Schwartz continued to push and pull at Forte which Forte was not resisting but only trying to keep from getting injured further by Schwartz.

68. Schwartz did not at any time tell Forte that he was being put under arrest, or what he was being handcuffed for. Schwartz then started telling Forte to put his hands behind his back while Forte was already complying from Schwartz's movement. Forte asked what he was being arrested for. Schwartz did not respond. Schwartz handcuffed Forte, but intentionally did not lock the handcuffs into position.

69. After Forte was handcuffed and standing calmly, Schwartz without warning or provocation slammed Forte face first on the ground and jumped on his back exerting pressure on to Forte's back.

70. Forte continued to ask Schwartz why he was being arrested while Schwartz was exerting more pressure on Forte's back.

71. Schwartz then shouted, "You're not going to go around saying you're going to shoot officers" (or words to that effect, recording is best evidence). Simultaneously while making the

---

violence will occur." In Watts v. United States, however, the Court held that only "true" threats are outside the First Amendment.981 The defendant in Watts, at a public rally at which he was expressing his opposition to the military draft, said, "If they ever make me carry a rifle, the first man I want to get in my sights is L.B.J." He was convicted of violating a federal statute that prohibited "any threat to take the life of or to inflict bodily harm upon the President of the United States." The Supreme Court reversed. Interpreting the statute "with the commands of the First Amendment clearly in mind,"it found that the defendant had not made a "true 'threat,'" but had indulged in mere "political hyperbole." www.law.justia.com

statement Schwartz grimaced and slammed his elbow into the back of plaintiff's head and pushed his knee further into plaintiff's back to cause excruciating pain and punish Forte.

72. While Forte was still on the ground with Schwartz on top of him, Deputy Watkins arrived. An ambulance was called to tend to the injuries sustained by Forte from Schwartz.

73. Forte was taken up off the ground and while standing in a neutral position, Schwartz then attacked Forte by legging sweeping Forte backward so that he landed on his back.

74. Schwartz's failed to lock the handcuffs in position. When Shwartz threw Forte backwards onto his handcuffs, they tightened causing extreme pain to his wrists. Shwartz was aware of the unlocked handcuffs and knew that falling onto them would cause Forte such pain. Deputy Watkins loosened the handcuffs and locked them into correct position.

75. Schwartz then transported Forte in his car to Modesto Hospital (but not directly). Schwartz drove back and forth past the hospital and around the block several times going over a road with extremely large dips in the road so that it would jar Forte and, in particular, cause pain to Forte's already injured wrists handcuffed behind his back.

76. During the trip, Schwartz continued to verbally abuse, harass and humiliated Forte by saying such things as, "No one wants to hear anything you have to say", "You need to understand, we're the boss. We're in charge," "You and your family should move up in the mountains away from everybody, get out of Patterson," "You should take your bra and panties and go and burn them up in Berkeley where your daughter goes to school."

77. Schwartz in response to Forte telling Schwartz that Forte had great kids that did well in school, Schwartz said "Your kids wouldn't be so proud of you now seeing you in handcuffs," and laughed. Schwartz under the color of state law harassed and humiliated Forte.

78. Upon arriving at the hospital, Schwartz had Forte walking about 20 yards behind him seeming to taunt Forte into "making a break for it" so that Schwartz could have a reason to shoot Forte, or tase him.

79. Schwartz would not tell Forte what he was arrested for. Schwartz told Forte that Forte was going to be eating bologna sandwiches and drinking sour milk for a long time, while Schwartz was going to be going home and having a nice dinner.

80. Schwartz told Forte he was going to be in jail for a long time unless he was independently wealthy. The statements by Schwartz were to provoke, demean, humiliate, harass and cause emotional distress to Forte and did cause such to plaintiff.

81. Schwartz was verbally abusive to plaintiff and caused him to fear that at any moment Schwartz would stop the car and beat Forte.

82. At this point, plaintiff's injuries consisted of lumps on the head, lacerations on his limbs, back pain and elevated blood pressure. Forte has had open heart surgery and started to have deep pains in his chest and feared he was about to have another heart attack. In addition, he had a large bruise under plaintiff's buttocks and pain and paralysis from the left elbow down to the left thumb, as well as very sharp pain in plaintiff's neck.

83. Schwartz upon arriving at the County Jail told Forte he was arrested for "felony stupid." Forte asked to be told what specifically and Schwartz did not reply.

84. Upon entering the station, Schwartz patted down Forte again and found that a digital recorder was still in Forte's vest when he was riding in the patrol car. Schwartz then smiled and pulled the battery out of the back in an attempt to erase any recordings of Schwartz's abusive treatment and verbal abuse.

85. Forte was never read his Miranda rights and only found out that he had been arrested for a Felony PC 71 after he was booked. Forte paid a bail of $20,000.00 which caused great financial hardship.

86. On February 5th, 2013, Stanislaus County DA Birgit Fladager rejected filing any charges against Forte for his arrest of December 3rd, 2013.

87. At no time did plaintiff offer any resistance to the treatment plaintiff received by Schwartz.

88. Schwartz started to process plaintiff on a charge of Felony PC 71. At no time pertinent hereto did plaintiff ever engage in any conduct sufficient to warrant a charge of Felony PC 71 evidenced by the DA's election not to file any charges.

89. As a direct and proximate result of the acts and omissions of defendants, plaintiff continues to feel pain from the injuries caused by Schwartz, Hughes and Christianson and was forced to suffer pain and mental cruelty, was deprived of physical liberty, and was forced to incur medical and legal expenses.

90. At all times pertinent to these allegations, plaintiff was unarmed and did not pose a threat of death or grievous bodily injury to defendants.

91. At no time did Schwartz or any other defendant officer have probable cause to believe plaintiff had committed or was committing a crime.

92. Schwartz and the other defendant officers acted with actual malice toward plaintiff and with willful and wanton indifference to and deliberate disregard for the statutory and constitutional rights of plaintiff. Schwartz's actions and the actions of the other defendant officers constitute unreasonable and excessive use of force and deprivation of liberty without due process of law.

93. Upon information and belief, at all times pertinent, the City of Patterson, Patterson Police Services, Patterson Police Services, Stanislaus County Sheriff Deputy Hughes, Christianson permitted and tolerated a pattern and practice of unreasonable use of force by police officers of Patterson/Stanislaus County and Merced County, and intended to punish citizens, and/or arrest them for recording a police officer in the performance of their duties.

94. Upon information and belief, City of Patterson, Patterson Police Services, Patterson Police Services, Stanislaus County Sheriff's Department/PD Hughes, Christianson has maintained a system of review of police conduct so untimely and cursory as to be ineffective and to permit and tolerate the unreasonable and excessive use of force by police officers.

95. The acts, omissions, systemic flaws, policies, and customs of City of Patterson, Patterson Police Services, Stanislaus County Sheriff's Department/PD Hughes, Christianson caused police officers of City of Patterson, Patterson Police Services, Stanislaus County Sheriff's Department to believe that the excessive and unreasonable use of force would not be aggressively, honestly, and properly investigated, with the foreseeable result that officers are more likely to use **excessive** or unreasonable **force** against plaintiff and others in the future.

## COUNT I: VIOLATION OF CONSTITUTIONAL RIGHTS

### [For Violation of 42 USC §1983 Against All Defendants]

### (Claim for Compensatory Damages)

96. Plaintiff incorporates by reference paragraphs 1 through 95.

97. The intentional beatings of plaintiff by Defendant Schwartz violated the rights of plaintiff as guaranteed by the Fourth Amendments to the United States Constitution, for which defendant officers are individually liable.

98. At all times, Defendant Schwartz committed all acts within the scope of his or her employment.

99. Defendant Christianson and Hughes had vicarious liability for the actions of Defendant. In addition, they established the policy of denying Forte due process by refusal to response to his claims and incident reports of crimes committed against him. It was at their instruction that Forte was to be informed that the violation of the law by Merced County Public Officials was not a concern of law enforcement of Stanislaus County or the FBI. Their joint objective with Schwartz was to harass, intimidate, and coerce Forte into not reporting crimes against him by Merced County Law Enforcement being DA Larry Morse, County Counsel James Fincher, et al. The conspiracy by Defendant Christianson, Hughes and Schwartz deprived Forte of his civil rights of due process and equal protection under the law and concealed the acts done under color of law by Merced County Law Enforcement in retaliation against Forte for exposing

public official corruption in the Badger Flats Gazette. Plaintiff is thus entitled to compensatory damages.

## COUNT II: VIOLATION OF CONSTITUTIONAL RIGHTS

### [For Violation of 42 USC §1983 Against All Defendants]

### (Claim for Exemplary Damages)

100.    Plaintiff incorporates by reference paragraphs 1 through 99.

101.    A conspiracy existed among the Defendants herein and others to deprive Plaintiff of his civil rights through a concerted and agreed upon campaign to harass, intimidate, and coerce Forte into not reporting crimes against him by Merced County Law Enforcement being DA Larry Morse, County Counsel James Fincher, et al. by wrongfully arresting Plaintiff, by using excess force in making arrests, by inflicting pain and emotional distress upon Forte whenever possible, by failing to take appropriate investigative actions in protecting Forte under the law, and taking the actions referenced above.

102.    As a result of Defendants' actions, Plaintiff has suffered pain, injury, fear, anxiety, emotional distress, and loss of dignity and pride, all to his damage in an amount to be proven at trial.

103.    Plaintiff also seeks an award of any attorney's fees he incurs in vindicating his rights under the law pursuant to 42 USC §1988.

104.    At all times mentioned herein, the Defendants, and each of them, were engaged in an oppressive course of conduct, intentionally, maliciously, willfully and with full knowledge that such conduct was in derogation of the law and the civil rights of Plaintiff.

105.    Plaintiff is entitled to exemplary damages.

## COUNT V: VIOLATION OF CONSTITUTIONAL RIGHTS

**Defendants City of Patterson, Patterson Police Services, Patterson Police Services, Stanislaus County Sheriff's Department, Christianson, and Hughes**

**(Claim for Compensatory Damages)**

106. Plaintiff incorporates by reference paragraphs 1 through 105.

107. It was the policy and practice of City of Patterson, Patterson Police Services, Patterson Police Services of Stanislaus County Sheriff's Department, Stanislaus county Sheriff's Department, Patterson Police Services Chief Hughes, Stanislaus County Sheriff Christianson to employ certain police officers, including defendant Schwartz and Hughes.

108. It was the policy and practice of City of Patterson, Patterson Police Services, Patterson Police Services, Stanislaus County Sheriff's Department, Hughes, and Christianson to authorize officers, including defendant Schwartz, to cover up the use of excessive force despite the lack of probable cause to arrest or any actual violation, by knowingly propagating the false fact that it was unlawful for Forte, or any other citizen to record officers in the performance of their duty.

109. By wrongly telling citizens, including Forte, that they could record police officers in the performance of their duty, and could be arrested for doing so, they were actively attempting to circumvent any recordings of excessive force and false arrests against citizens such as Forte.

110. This policy and practice of City of Patterson, Patterson Police Services, Patterson Police Services, and Stanislaus County Sheriff's Department encouraged and caused constitutional violations by police officers of the City of Patterson, Patterson Police Services, Patterson Police Services, and Stanislaus County Sheriff's Department, including the violation of plaintiff's constitutional rights by defendant Schwartz, Hughes and Christianson.

111. It was the policy and practice of City of Patterson, Patterson Police Services, Patterson Police Services, Stanislaus County Sheriff's Department, Hughes, and Christianson to authorize certain officers, including defendant Schwartz, to deny and prevent prompt medical treatment of injured persons in the care and custody of the Patterson Police Services, to abuse

verbally those detained persons who sought to assert these rights such as recording an officer in the performance of his duties.

112.     These policies and practices of aforementioned defendants encouraged and caused constitutional violations, including the violations of plaintiff's constitutional rights by defendants Schwartz, Hughes and Christianson on Forte.

113.     At all pertinent times, defendants Hughes and Christianson and other unknown supervisors who supervised the officers, who unlawfully violated plaintiff's rights, encouraged and tolerated the policies and practices. Defendants Hughes and Christianson refused adequately to train, direct, supervise, or control defendant officers so as to prevent the violation of plaintiff's constitutional rights.

114.     Defendants Hughes, Christianson were acting within the scope of their employment and pursuant to the policies and practices of City of Patterson, Patterson Police Services, Patterson Police Services, Stanislaus County Sheriff's Department. These policies and practices were enforced by defendants Schwartz, Hughes, Christianson, and were the moving force, proximate cause, or affirmative link behind the conduct causing the plaintiff's injury. City of Patterson, Patterson Police Services, Patterson Police Services, Stanislaus County Sheriff's Department and defendants Hughes and Christianson are therefore liable for the violation of plaintiff's constitutional rights by defendants Schwartz, Hughes and Christianson.

## COUNT VI: CONSPIRACY TO VIOLATE CIVIL RIGHTS

### Defendants Schwartz, Hughes and Christianson

### (Claim for Compensatory Damages)

115.     Plaintiff incorporates by reference paragraphs 1 through 114.

116.     On September 18th[h], 2012 plaintiff seeing that Merced County Public Defender Eric Dumars was acting irrationally and  violating his duty to Forte by attempting to have him declared mentally incompetent when he was not to conceal a malicious abuse of process by

Morse, et al., to deprive Forte of his civil rights, and to punish him for exposing public/judicial corruption Forte notified the Merced County Board of Supervisor, Merced Superior Court Judges, Larry Coombs the Merced County Administrator and his Assistant, Angelo Lamas, the Attorney General's Office, DA Fladager and Judge James Cadle that Dumars was in need of a mental evaluation and could be a danger to himself or others.

117.    On September 16th, 2013, Forte filed a Merced County Grand Jury Complaint against Dumars for egregious ineffectiveness of counsel, malicious abuse of process and breach of his duty by having Forte declared mentally incompetent to aid the assault by DA Morse.

118.    On October 1st, 2013 the Merced County Grand Jury rejected the complaint of Forte against Dumars and Forte made a second request on October 16th, 2013 of Dumars wherein Forte said that Dumars was out of control and retaliating against Forte for exposing his selling Forte out to DA Morse.

119.    It was contained in the investigative internal report of Dumars which started sometime in October 2013 by Sutton/Hattmaker of Fresno, CA. that Dumars attempted to hang himself in his garage on September 28th, 2013. The report also revealed that employees within the office feared for their safety from Dumars violent rages and said that he was unstable beating files with a baseball bat and calling out the client's name. Forte had informed Watkins and other law enforcement including the FBI that he feared for his safety, but no one did anything to investigate his problems with the maniacal Dumars which has now been confirmed by independent reports to have been well founded.

120.    On January 28th, 2013 Dumars violated his duty by abandoning Forte and helping to provide an escape route for Morse and co-defendants to avoid liability a malicious prosecution action in the case of Forte v. Merced County.

121.    On September 10th, 2013 plaintiff filed a police report with Deputy Watkins that Hughes, Christianson and Schwartz would have known documented unlawful acts by Merced County

law enforcement DA Morse, Pazin, Dumars and others that would be a violation of plaintiff's

constitutional and civil rights to be free from oppression for exposing public corruption in his

paper the Badger Flats Gazette.

122.    Defendants joined together in a conspiracy of silence to abet the "malicious" abuse of

process under the color of law to deprive Forte of his constitutional rights by Merced County

DA Morse, et al. by not attempting to assist Forte.

123.    On December 3rd, 2012 in furtherance of the conspiracy to discredit and punish Forte for

exposing the assault upon him by Merced County public officials, Schwartz falsely arrested

Forte to paint the false picture of Forte being a violent criminal that police and judicial officers

should fear and punish openly.

124.    DA Morse, Sheriff Mark Pazin, et al, defendants in the lawsuit by Forte, were in

communication and agreement with defendant Christianson for Stanislaus County to continue

to deny Forte equal protection under the law, and to help conceal what attorneys in Stanislaus

County have told plaintiff in recorded phone conversations that they feared for their families if

they were to reveal what the judiciary and law enforcement have been doing to deny Forte his

rights.

125.    Defendants Hughes, Schwartz and Christianson had been provided articles written by Forte

in the Badger Flats Gazette and posted at BadgerFlats.com that highlighted the audio

recordings of Deputy Randy Watkins verifying that there were false police reports by Merced

County arresting officers, and that the Grand Jury investigation of Forte's complaint against

Morse, O'Banion, Pazin, Fincher, et al had been tampered with by James Fincher.

126.    Defendants Hughes, Schwartz and Christianson, along with Stanislaus County DA Birgit

Fladager,  were aware that Forte was filing in his court papers notices that Stanislaus County

law enforcement was being requested to intercede to provide equal protection under the law for

Forte from renegade law enforcement activities by Merced County  to deprive Forte of his

constitutional rights culminating into what is called the political abuse of psychology as was used in Russia to silence people exposing government corruption.

127.    On January 25th, 2013, Forte sought an emergency Writ from the Fifth appellate Court and supplied them a 30 minute CD of a recorded conversation with Dumars on the morning of January 25th, 2013 in an attempt to stay what was an unnoticed competency trial for Monday January 28th, 2013 brought by Dumars.

128.    Forte presented the Writ at 4:35PM, and was notified by the court at 5:05PM that the Writ was denied which would not have even permitted for the audio CD to have been listened to.

129.    On January 28th, 2013 at the competency trial, the false arrest on December 3rd, 2012 by Schwartz was used by Dumars as an example that it exhibited much of the same bad conduct that Forte has done before.

130.    Dr. Blak testified that Forte could possibly be an indirect danger to others in that if cameras were on he might act up more, and accidentally bump into someone and hurt them. Blak to aid in the conspiracy he was involved with to paint Forte in a bad light, and delusional, said that it would be impossible for a person to work with his attorney, especially since Forte was accusing Dumars of nefarious acts such as cocaine addiction.

131.    Defendants Hughes, Schwartz, Christianson were in agreement and in agreement with DA Birgit Fladager who was in communications and agreement with Morse that the normal arraignment date which would have been January 3rd, 2013 would be delayed until after the January 28th, 2013 competency proceeding Dumars and Morse were subversively staging to stop a criminal trial taking place of Forte that had Deputy Randy Watkins subpoenaed as a witness for the defense (Forte).

132.    Hughes, Christianson and Schwartz were acting in a conspiracy to deprive Forte of his constitutional rights. It is not necessary for any one conspirator to know of the others acts but only to further the intent and objective of the conspiracy by Hughes, Schwartz, Christianson

and DA Fladager to conceal the unlawful acts of DA Morse, Pazin et al. done to Forte which they would know was depriving Forte of his constitutional rights, i.e., being declared mentally incompetent without seeing a Dr.(when he was not) to conceal prosecutorial misconduct, defense misconduct and "fraud upon the court" by Judge Cadle.

133.   Hughes, Christianson, Schwartz, and Fladager joined in the common objective of the conspiracy of DA Larry Morse to paint Forte in a bad light, ridicule, mock, and deny him equal protection under the law to deprive him of his constitutional rights.

134.   Defendants Schwartz, Hughes, Christianson conspired to violate plaintiff's statutory civil rights in violation of 42 U.S.C. § 1983, for which defendants Schwartz, Hughes and Christianson are individually liable.

## COUNT VII: ASSAULT AND BATTERY

### Defendants Schwartz, Hughes and Christianson

### (Claim for Compensatory Damages)

135.   Plaintiff incorporates by reference paragraphs 1 through 134.

136.   The beatings, verbal abuse, and use of non-deadly **force** by defendants Schwartz when defendants had no lawful authority to arrest plaintiff, when plaintiff was unarmed and did not pose a threat of death or grievous bodily injury to defendants or others, was without justification or provocation, was **excessive**, and constitutes assault and battery for which defendants Schwartz, Christianson, Hughes are individually liable.

137.   As a proximate result of the assault and battery committed by defendants Schwartz, Hughes, Christianson, plaintiff has sustained permanent injuries and has incurred medical bills and other expenses. These injuries have caused and will continue to cause plaintiff great pain and suffering, both mental and physical.

## COUNT VIII: ASSAULT AND BATTERY

### Defendants Schwartz, Hughes and Christianson

**(Claim for Exemplary Damages)**

138.    Plaintiff incorporates reference paragraphs 1 through 137.

139.    The intentional beatings and verbal abuse of plaintiff by defendants Schwartz, when

plaintiff was unarmed and did not pose a threat of death or grievous bodily injury to defendants

or others, when defendants did not have lawful authority to arrest plaintiff or to use deadly or

non-deadly force against plaintiff, was done with actual malice toward plaintiff and with willful

and wanton indifference to and deliberate disregard for human life and the rights of plaintiff.

Plaintiff is thus entitled to exemplary damages.

**COUNTY IX: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

**Defendants Schwartz, Hughes and Christianson**

**(Claim for Compensatory Damages)**

140.    Plaintiff incorporates by reference paragraphs 1 through 139.

141.    Defendants Schwartz intentionally beat and verbally abused plaintiff in a manner that was

extreme, outrageous, and unjustified, and caused plaintiff to suffer physical and emotional

distress for which defendants Schwartz, Hughes, Christianson are individually liable.

142.    Plaintiff suffers what could be diagnosed and described as PSTS due to prolonged exposure

to combat abuses done under the color of law to deprive him of his rights by having him

declared mentally incompetent when he was not.

143.    The defendants Schwartz, Hughes and Christianson engaged in extreme and outrageous

conduct by conspiring to paint Forte in  a false light and intimidate him by a false arrest to

conceal the criminal acts against him by Merced County law enforcement and did so with the

intent to cause, or with reckless disregard for the probability of causing, emotional distress.

144.    Plaintiff suffered extreme and severe emotional distress and has received medical treatment

and continues to undergo mental counseling and therapy as a direct and proximate result of the

actions of defendants Schwartz, Hughes, and Christianson which have caused plaintiff to suffer extreme stress, lack of sleep, anxiety, headaches, and emotional duress.

145.     Defendants Schwartz, Hughes and Christianson knew, or should have known that Forte had suffered a heart attack and underwent open heart surgery in a courtroom.  Forte had a complete disruption of life and diagnosed as having symptoms of depression.

146.     Forte continues to suffer and did suffer from anxiety, chest tightness, heart palpitations, panic attacks, insomnia and stress due to the direct actions of Schwartz, Hughes, Christianson and Fladager, and the conspiracy of DA Morse to deprive Forte of his constitutional rights that Hughes, Schwartz and Christianson are abetting.

147.     Defendant's extreme and outrageous conduct was the actual and proximate cause of the plaintiff's extreme or severe emotional distress. Yun Hee So v. Sook Ja Shin, 212 Cal.App.4th 652, 671 (2013).

148.     Defendants Schwartz intentionally beat and verbally abused plaintiff in a manner that was extreme, outrageous, and unjustified, and caused plaintiff to suffer physical and emotional distress for which defendants Schwartz, Hughes, Christianson are individually liable.

## COUNT X: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

### Defendants Schwartz, Hughes and Christianson

### (Claim for Exemplary Damages)

149.     Plaintiff incorporates by reference paragraphs 1 through 148.

150.     Plaintiff suffered extreme and severe emotional distress and has received medical treatment and continues to undergo mental counseling and therapy as a direct and proximate result of the actions of defendants Schwartz, Hughes, and Christianson which have caused plaintiff to suffer extreme stress, lack of sleep, anxiety, headaches, and emotional duress.

151.   Defendants Schwartz, Hughes and Christianson knew, or should have known that Forte had suffered a heart attack and underwent open heart surgery in a courtroom. Forte had a complete disruption of life and diagnosed as having symptoms of depression.

152.   Forte continues to suffer and did suffer from anxiety, chest tightness, heart palpitations, panic attacks, insomnia and stress due to the direct actions of Schwartz, Hughes, Christianson and Fladager, and the conspiracy of DA Morse to deprive Forte of his constitutional rights that Hughes, Schwartz and Christianson are abetting.

153.   Defendant's extreme and outrageous conduct was the actual and proximate cause of the plaintiff's extreme or severe emotional distress. Yun Hee So v. Sook Ja Shin, 212 Cal.App.4th 652, 671 (2013).

154.   The intentional beating, emotional abuse, emotional distress, and fear of being harmed from the threats of Schwartz during the ride over to the county hospital and jail on December 3rd, 2012 were unjustified and done with actual malice and wanton indifference to and deliberate disregard for human life and the rights of plaintiff. Plaintiff is thus entitled to exemplary damages.

155.   The intentional beatings and verbal abuse of plaintiff by defendants Schwartz were unjustified and done with actual malice and wanton indifference to and deliberate disregard for human life and the rights of plaintiff. Plaintiff is thus entitled to exemplary damages.

## COUNT XI: RESPONDEAT SUPERIOR LIABILITY

**Defendant City of Patterson, Patterson Police Services, Patterson Police Services, Stanislaus County Sheriff's Department**

**(Claim for Compensatory Damages)**

156.   Plaintiff incorporates by reference paragraphs 1 through 155.

157.   At all times pertinent here to, defendants *Schwartz, Hughes, Christianson* were acting within the scope of their employment as an officer of City of Patterson, Patterson Police Services, Patterson Police Services, Stanislaus County Sheriff's Department.

158.   City of Patterson, Patterson Police Services, Stanislaus County Sheriff's Department is liable for compensatory damages under the doctrine of respondeat superior for the intentional torts of defendants Schwartz, Hughes, Christianson committed within the scope of their employment.

## COUNT XII: RESPONDEAT SUPERIOR LIABILITY

## Defendant City of Patterson, Patterson Police Services, Patterson Police Services, Stanislaus County Sheriff's Department

## (Claim for Exemplary Damages)

159.   Plaintiff incorporates by reference paragraphs 1 through 158.

160.   Defendant City of Patterson, Patterson Police Services, Patterson Police Services, and Stanislaus County Sheriff's Department through its agents, expressly authorized defendants *Schwartz, Hughes, Christianson,* to use excessive force; knew, through its agents, that the defendant officers had a propensity for committing intentional torts, using excessive force in the line of duty; and acquiesced in the defendant's wrongful conduct.

161.   Plaintiff is thus entitled to exemplary damages against Defendant City of Patterson, Patterson Police Services, Patterson Police Services, Stanislaus County Sheriff's Department for the malicious conduct of defendants.

## COUNT XIII: NEGLIGENCE

## Defendants Schwartz, Hughes, Christianson

## (Claim for Compensatory Damages)

162.   Plaintiff incorporates by reference paragraphs 1 through 161.

163.    Defendants *Schwartz, Hughes, Christianson*, while acting as agents and employees for City of Patterson, Patterson Police Services, Patterson Police Services, and Stanislaus County Sheriff's Department in their capacity as police officers for City of Patterson, Patterson Police Services, Patterson Police Services, Stanislaus County Sheriff's Department owed a duty to plaintiff to perform their police duties without the use of excessive force. Defendants' use of force upon plaintiff, when plaintiff was unarmed and did not pose a threat of death or grievous bodily injury to defendants or others constitutes negligence for which defendants Schwartz, Hughes, Christianson are individually liable.

164.    Defendants Schwartz, Hughes, Christianson use of force upon plaintiff when defendants had no lawful authority to arrest plaintiff or to use force against plaintiff constitutes negligence for which defendants are individually liable.

165.    As a proximate result of defendants' negligent use of excessive force, plaintiff has sustained permanent injuries and plaintiff has incurred medical bills and other expenses. These injuries have caused and will continue to cause plaintiff pain and suffering, both mental and physical.

## COUNT XIV: NEGLIGENCE

### Defendants Schwartz, Hughes, Christianson

### (Claim for Exemplary Damages)

166.    Plaintiff incorporates by reference paragraphs 1 through 165.

167.    The negligent beatings of plaintiff by defendants Schwartz, Hughes, Christianson when plaintiff was unarmed and did not pose a threat of death or grievous bodily injury to defendants or others, and when defendants had no lawful authority to arrest plaintiff or to use deadly force against plaintiff, was done with willful and wanton indifference to and deliberate disregard for human life and the rights of plaintiff. Plaintiff is thus entitled to exemplary damages.

## COUNT XV: NEGLIGENCE

**Defendant Schwartz**

**(Claim for Compensatory Damages)**

168.   Plaintiff incorporates by reference paragraphs 1 through 167.

169.   At all times of the incident, defendants Schwartz was acting within the scope of their employment as an officer of the City of Patterson, Patterson Police Services, Patterson Police Services, Stanislaus County Sheriff's Department.

170.   The City of Patterson, Patterson Police Services, Patterson Police Services, Stanislaus County Sheriff department, Stanislaus County is liable for compensatory damages under the doctrine of respondeat superior for the negligence of defendant Schwartz committed within the scope of their employment.

**COUNT XVI: NEGLIGENCE**

**Defendants City of Patterson, Patterson Police Services, Patterson Police Services,**

**Stanislaus County Sheriff Department, Stanislaus County**

**(Claim for Compensatory Damages)**

171.   Plaintiff incorporates by reference paragraphs 1 through 170.

172.   The City of Patterson, Patterson Police Services, Patterson Police Services, Stanislaus County Sheriff department, Stanislaus County owed a duty to plaintiff to train and supervise and otherwise control its police officers in the use of deadly force and other matters incidental to the exercise of police functions. The City of Patterson, Patterson Police Services, Patterson Police Services, Stanislaus County Sheriff department, Stanislaus County  failed to provide adequate training, supervision, and control of defendants Schwartz, Hughes, Christianson, which failure constitutes negligence.

173.   As a proximate result of The City of Patterson, Patterson Police Services, Patterson Police Services, Stanislaus County Sheriff department, Stanislaus County   negligent failure to provide adequate training, supervision, and control of defendants *[names]*, plaintiff has sustained

permanent injuries and plaintiff has incurred and will continue to incur medical bills and other expenses. These injuries have caused and will continue to cause plaintiff pain and suffering, both mental and physical.

### COUNT XVII: NEGLIGENCE

**The City of Patterson, Patterson Police Services, Patterson Police Services,**

**Stanislaus County Sheriff Department, Stanislaus County**

**(Claim Exemplary Damages)**

174.   Plaintiff incorporates by reference paragraphs 1 through 174.

175.   The City of Patterson, Patterson Police Services, Stanislaus County Sheriff department, Stanislaus County's failure to provide adequate training and supervision to its police officers constitutes a willful and wanton indifference and deliberate disregard for human life and the rights of private citizens, including plaintiff. Plaintiff is thus entitled to exemplary damages.

### COUNT XVIII: MALICIOUS ABUSE OF PROCESS, FALSE ARREST,

### AND FALSE IMPRISONMENT

**Schwartz, Hughes, Christianson Defendants**

**(Claim for Compensatory Damages)**

176.   Plaintiff incorporates by reference paragraphs 1 through 175.

177.   Defendants Schwartz, Hughes, Christianson used criminal process against plaintiff in order to intimidate plaintiff and to dissuade plaintiff from asserting plaintiff's rights against defendants and in order to cover up their own wrongdoing and to avoid civil and criminal liability for their own acts and that of DA Larry Morse in the conspiracy to deprive Forte of his right to due process.

178.   Defendants Schwartz, Hughes, Christianson falsely arrested and falsely imprisoned plaintiff in furtherance of their conspiracy to aid the conspiracy of DA Morse to deprive Forte of his constitutional right of exposing public corruption in his Badger Flats Gazette.

179.    As a proximate result of this malicious abuse of process, false arrest, and false imprisonment, plaintiff suffered damages.

### COUNT XIX: DENIAL OF MEDICAL TREATMENT

180.    Plaintiff incorporates by reference paragraphs 1 through 179.

181.    Plaintiff was entitled to prompt medical treatment upon plaintiff's arrest and confinement and defendants Schwartz, Hughes, and Christianson deliberately and intentionally failed promptly to provide plaintiff with such medical treatment.

182.    Schwartz deliberately took back roads and drove around in circles in Modesto driving past the hospital several times causing discomfort and pain, and extending the period for Schwartz to verbally abuse and threaten Forte with harm while Forte was imprisoned in the back of the squad car with his arms wrenched behind his back.

183.    Schwartz warned and advised Forte that he should take his family and move from Patterson up in the mountains because "they" the police were in charge, not Forte or other citizens.

184.    As a proximate result of this denial of medical treatment, plaintiff suffered damages.

///

185.   WHEREFORE, plaintiff requests that this Court enter judgment against the defendants and award the following amounts:

a.     $ 1,000,000.00 compensatory damages in favor of plaintiff;

b.     $ 5,000,000.00 exemplary damages in favor of plaintiff;

c.     Costs of this action, including reasonable attorney fees to the plaintiff; and

d.     Such other and further relief as the court may deem appropriate.

Dated: February 10th, 2014



Eugene E. Forte

## DEMAND FOR JURY TRIAL

186.   Pursuant to Rule 38 of the Federal Rules of Civil Procedure, plaintiff demands a trial by jury.

Dated:   February 10th, 2014

Eugene E. Forte