1
2
3
4
5

# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EUGENE FORTE,<br><br>          Plaintiff,<br><br>     v.<br><br>PATTERSON PD CHIEF TORI HUGHES,<br>et al.,<br><br>          Defendants. | Case No. 1:13-CV-01980-LJO-SMS<br><br>FINDINGS AND RECOMMENDATIONS<br>RECOMMENDING THAT LAWSUIT<br>PROCEED FOLLOWING DISMISSAL OF<br>CERTAIN CLAIMS AND DEFENDANTS<br><br><br>(Doc. 13) |

## SCREENING ORDER

On December 3, 2013, Plaintiff Eugene E. Forte, proceeding *pro se* and *in forma pauperis* in this action under 42 U.S.C. § 1983, alleged excessive force in executing an arrest and eighteen other counts against defendants City of Patterson, Patterson Police Department, Stanislaus County Sheriff's Department, Police Chief Tori Hughes, Deputy Chris Schwartz, and Stanislaus County Sheriff Adam Christianson.  On January 10, 2014, the Court issued its first screening order, requiring Plaintiff, within thirty days, to either file an amended complaint or to notify the Court of his willingness to proceed only on those claims found to be cognizable.  Plaintiff filed the first amended complaint on February 11, 2014.

///

///

1

Screening of the first amended complaint in accordance with the requirements of 28 U.S.C. § 1915 reveals that despite amendment, the first amended complaint includes certain claims that are not cognizable.   Accordingly, this order recommends dismissal of noncognizable claims.

## I.    Screening Requirement

The court has inherent power to control its docket and the disposition of its cases with economy of time and effort for both the court and the parties.  *Landis v. North American Co.*, 299 U.S. 248, 254-55 (1936); *Ferdik v. Bonzelet*, 963 F.2d 1258, 1260 (9th Cir. 1992).  In cases in which the plaintiff is proceeding *in forma pauperis*, the Court must screen the complaint and dismiss it at any time that the Court concludes that the action is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915(e)(2).  "Notwithstanding any filing fee, or portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted."  28 U.S.C. § 1915(e)(2)(B)(ii).

In screening a complaint, the Court does not rule on the merits of the proposed action. Instead, it evaluates whether the complaint sets forth facts sufficient to render each claim cognizable. The screening process does not substitute for any subsequent Rule 12(b)(6) motion that a defendant may elect to bring later.  *Teahan v. Wilhelm*, 481 F.Supp.2d 1115, 1120 (S.D. Cal. 2007).

## II.    Pleading Standards

Federal Rule of Civil Procedure 8(a) provides:

A pleading that states a claim for relief must contain:

> (1)    a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support;
>
> (2)    a short and plain statement of the claim showing the pleader is entitled to relief; and
>
> (3)    a demand for the relief sought, which may include relief in the alternative or different types of relief.

2

"Each allegation must be simple, concise, and direct." F.R.Civ.P. 8(d).

"Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions," none of which applies here. *Swierkiewicz v. Sorema  N. A.*, 534 U.S. 506, 512 (2002). Pursuant to Rule 8(a), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a). "Such a statement must simply give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz*, 534 U.S. at 512. Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of the cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), *citing Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Plaintiff must set forth sufficient factual matter accepted as true, to 'state a claim that is plausible on its face.'" *Iqbal*, 556 U.S. at 678, *quoting Twombly*, 550 U.S. at 555. While factual allegations are accepted as true, legal conclusions are not. *Iqbal*, 556 U.S. at 678

Although accepted as true, "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (*citations omitted*). A plaintiff must set forth "the grounds of his entitlement to relief," which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Id.* at 555-56 (*internal quotation marks and citations omitted*). To adequately state a claim against a defendant, the complaint must set forth the claim's legal and factual basis.

In dismissing the original complaint with leave to amend, this Court advised Plaintiff that he needed to allege *facts* to support many of his allegations. A fact is "[s]omething that actually exists; an aspect of reality." Black's Law Dictionary at 628 (8th ed. 2004). It is "[a]n actual or alleged event or circumstance, as distinguished from its legal effect, consequence, or interpretation." *Id.* In preparing the first amended complaint, Plaintiff has generally failed to provide the additional factual information requested by the Court, instead augmenting the original complaint with additional legal conclusions, personal interpretation, opinions, and arguments. In the absence of any factual basis,

1    many of these opinions and interpretations are frivolous, fanciful, malicious, or apparently intended

2    to harass one or more defendants.  The Court is required to dismiss such claims.  28 U.S.C. §

3    1915(d)(2).

4         The first amended complaint also needlessly conflates claims relating to Officer Schwartz's

5    arresting Plaintiff with Plaintiff's claims against officials in Merced County and the City of Los

6    Banos.[1]  The first amended complaint includes no facts linking those claims to the arrest that gave

7    rise to the cognizable claims in this action.  In the complete absence of any factual evidence

8    connecting an officer's use of excessive force in a Stanislaus County arrest with the unrelated

9    disputes in Merced County, claims that the incidents are somehow related are merely speculative and

10    cannot go forward.

11

12         In addition, Plaintiff's claims against Merced County and City of Los Banos officials are

13    before this Court in other cases.  Plaintiff is warned that unnecessary repetition of the same claims in

14    multiple cases is abusive of the judicial process.  "Flagrant abuse of the judicial process cannot be

15    tolerated because it enables one person to preempt the use of judicial time that properly could be

16    used to consider the meritorious claims of other litigants."  *DeLong v. Hennessey*, 912 F.2d 1144,

17    1148 (9th Cir. 1990).

18

19 **III.**     **Factual Allegations**

20         Plaintiff publishes the *Badger Flats Gazette*, a blog that alleges corruption of judicial

21    officers, public officials, and police officers.  In 2003, Plaintiff ran for governor of California on a

22    platform of exposing the corruption of political and judicial officials.  The first amended complaint

23    alleges details of Plaintiff's long history of poor relations with officials in the City of Los Banos and

24    in Merced County, California, where he and his family formerly lived.  Believing that continued

25

26

27

28

---

[1] In addition to this case, Plaintiff has filed two cases against various officials and officers in Merced County and the City of Los Banos: *Forte v. County of Merced* (1:11-cv-00318-AWI-BAM) and *Forte v. Jones* (1:11-cv-00718-AWI-BAM).

residence in Merced County was not safe, Plaintiff and his family moved in July 2010 to the City of Patterson, Stanislaus County, California.

Since 1998, the Stanislaus County Sheriff's Department has contracted to provide police services to Patterson.  www.scsdonline.com/patterson/ (June 18, 2014).  Defendant Tori Hughes is the Patterson Police Services Chief.  Defendant Hughes supervises all employees of Patterson Police Services, including Defendant Officer Schwartz and Officer Watkins, who is not named as a defendant in this action.  Defendant Adam Christianson, the Stanislaus County Sheriff, supervises Defendant Hughes.

After Plaintiff and his family moved to Patterson, he and his wife met with Defendant Hughes to recount their difficulties in Merced County, including a series of communications that they believed to have been death threats.  Plaintiff and his wife expressed concern that someone aggrieved by Plaintiff's activities in Merced County would seek further retribution against Plaintiff or a family member.  Defendant Hughes told Plaintiff that "if law enforcement in the adjoining Merced County was not addressing law enforcement issues against themselves that Plaintiff could go to Stanislaus County as plaintiff was doing to report it."  Doc. 13 at 5 ¶ 24.

On May 4, 2011, Plaintiff reported to a Patterson Police officer[2] named Randy Watkins that he had been falsely arrested and was experiencing retaliation after he reported corruption involving Merced County District Attorney Larry Morse, Los Banos Mayor Tommy Jones, and Merced County Counsel James Fancher.  On July 7, 2011, Officer Watkins reported the results of his investigation, which corroborated Plaintiff's allegations.[3]  Throughout 2012, Plaintiff contacted Defendant Hughes and Officer Watkins on many occasions.

On December 3, 2012, Plaintiff unsuccessfully attempted to call the FBI in Fresno twelve times.  Each time, the receptionist hung up the phone when Plaintiff stated that he was recording the

---

[2] The complaint identifies Patterson law enforcement officers as both Patterson police officers and a Stanislaus County Sheriff's deputies.  For clarity and brevity, these findings and recommendations will refer to the officers as police officers.  No conclusion as to the officer's legal status is intended.
[3] The first amended complaint does not explain the nature and purpose of Officer Watkins' investigation.

5

call.  Plaintiff then sought to file a complaint with the Patterson Police to report the FBI's misconduct.

When officers[4] arrived at Plaintiff's home, they refused to agree to Plaintiff's recording their conversation with him, even when Plaintiff explained that recording was necessary to protect Plaintiff from any future allegations that he had threatened law enforcement officers.  Plaintiff also told the officers that he had been trying to reach Watkins and Defendant Hughes, but that neither had responded.  Disclaiming any ability to compel a response from Watkins or Hughes, the officers walked away from Plaintiff's front porch, laughing and mocking Plaintiff.  When Plaintiff attempted to call them back, one office waved bye-bye like a child but did not turn back.

While driving with his wife that evening, Plaintiff saw a Patterson police car in front of him.  Knowing that Watkins frequently worked nights, Plaintiff flashed his headlights for the officer to stop.  Defendant Schwartz then pulled over to speak to Plaintiff at the curb.  Plaintiff audio-recorded Schwartz, and Mrs. Forte video-recorded the meeting on her cell phone.  Schwartz was aware that he was being recorded.

Plaintiff asked Schwartz if he knew where Watkins was that night.  Schwartz replied "brashly" and "in a rude tone" that he did not know if Watkins was on duty, but asked if he could help.  Plaintiff explained that he had been leaving messages for Watkins but that Watkins had not called him back.  Schwartz said that since September 10, 2012, Watkins had been given specific instructions for dealing with any police report Forte made concerning Merced County.  As a result, Schwartz could not help Plaintiff, who would have to speak directly with Watkins.  The complaint continues:

> 60.  Deputy Schwartz said in an insulting, combative tone that he was "aware of all the nonsense[."]  The exchange continued with Schwartz becoming more

---

[4] The first amended complaint does not identify the responding officers, but alleges that they were identified in the incident report.

insulting and mocking with Schwartz getting back into his patrol car while [Plaintiff] was still asking for Schwartz to explain what "nonsense" was he aware of.

61.  Schwartz then, in a rude, mocking, and insulting tone of voice, told [Plaintiff] that he should understand why Chief Hughes and Deputy Watkins had not called back was not because they were not doing their job but because it was not a law enforcement matter.

62.  Schwartz told [Plaintiff] in a ridiculing tone that the FBI was not going to help him, the DA was not going to help him and they weren't going to help him. Schwartz operating under instructions of Hughes to humiliate, ignore and trivialize [Plaintiff].

63.  Schwartz told [Plaintiff] with prodding hyperbole that if [Plaintiff's] problem was with law enforcement, why did he keep coming back to them?  He was communicating to [Plaintiff] that [Plaintiff] was not going to receive any response, help, or action from law enforcement so [Plaintiff] may as well give up.

Doc. 13 at 12, ¶¶ 60, 61, 62, and 63.

Plaintiff responded, "What would you want me to do?  Get a gun and shoot you guys?  I am certainly not going to do that!"  Doc. 13 at 12 ¶ 64.  At that remark, Schwartz swung open his door, knocking Plaintiff backward.  Plaintiff backed up six to ten feet and twice asked Schwartz why he had done that. Schwartz did not respond but grabbed for the recorder in Plaintiff's hand.  Plaintiff had already handed it off to his wife.  Schwartz pushed and pulled Plaintiff, who did not resist but attempted to avoid being injured.

Although Schwartz did not tell Plaintiff that he was under arrest, Schwartz told Plaintiff to put his hands behind his back to be handcuffed.  Schwartz did not respond to Plaintiff's questions about why he was being arrested.  Schwartz intentionally did not lock the handcuffs.

When Plaintiff had been handcuffed, Schwartz pushed Plaintiff face first into the ground and jumped on Plaintiff's back.  Plaintiff continued to ask why he was being arrested.  While slamming his elbow into Plaintiff's head and pushing his knee harder into Plaintiff's back, Schwartz finally responded that Plaintiff could not threaten to shoot police officers.  Then, "[Plaintiff] was taken up off the ground and while standing in a neutral position, Schwartz then attacked [Plaintiff] by legging

7

sweeping [*sic*] [Plaintiff] backward so that he landed on his back."  Doc. 13 at 41, ¶ 73.  During the course of the altercation, Watkins arrived, and an ambulance was called for Plaintiff.

Schwartz drove Plaintiff to Modesto Hospital, then to the county jail.  Instead of taking Plaintiff directly to the hospital, Schwartz drove back and forth past the hospital and around the block several times, using a road with large dips to jar [Plaintiff] and cause the unlocked handcuffs to tighten and painfully injure Plaintiff's wrists.

Throughout the trip, Schwartz verbally abused, harassed, and humiliated Plaintiff by saying things such as "You need to understand, we're the boss.  We're in charge"; "You and your family should move up in the mountains away from everybody, get out of Patterson"; and "Your kids wouldn't be so proud of you now seeing you in handcuffs."  Doc. 13 at 11 ¶¶ 76 and 77.  Schwartz also told Plaintiff that, while Schwartz would be going home to a nice dinner, Plaintiff would be eating bologna sandwiches and drinking sour milk, and that Plaintiff would be in jail for a long time unless he was independently wealthy.  Schwartz's statements were intended to "provoke, demean, humiliate, harass and cause emotional distress."  Doc. 13 at 15, ¶ 80.  According to the complaint, they worked as intended: Plaintiff feared that Schwartz would stop the car and beat him.

Upon arriving at the hospital, Schwartz allowed Plaintiff to trail behind him "seeming to taunt [Plaintiff] into 'making a break for it' so that Schwartz could have a reason to shoot [Plaintiff], or tase him."  Doc. 13 at 14 ¶ 78.  Plaintiff suffered lumps on his head, lacerations on his arms and legs, back pain, and elevated blood pressure.  His buttocks were bruised.  He had a sharp pain in his neck, and pain and paralysis from his left elbow to his left thumb.

Upon arrival at the county jail, Schwartz told Plaintiff he had been arrested for "felony stupid."  Doc. 1 at 11 ¶ 62.  Schwartz patted down Plaintiff, found the recorder that had been running for the entire trip to the jail, and removed its batteries.

///

///

8

At booking, Plaintiff learned he had been arrested for threatening a public officer in violation of California Penal Code § 71.  Plaintiff was later released on $20,000 bail.  On February 5, 2013, Stanislaus County District Attorney Birgit Fladager elected not to prosecute the case.

**IV.    Counts One and Two: Excessive Force in Course of Arrest[5]**

Plaintiff contends that by intentionally beating Plaintiff, all Defendants violated his Fourth Amendment rights.  Excessive force in the course of arrest implicates the Fourth Amendment to the U.S. Constitution, which governs citizens' rights in the course of searches and seizures.  As the facts allege, however, all Defendants did not beat Plaintiff—only the arresting officer, Defendant Schwartz, did so.

Under the Fourth Amendment, made applicable to the states by the Fourteenth Amendment, people are to be secure against unreasonable searches and seizures.  *Maryland v. Pringle*, 540 U.S. 366, 369 (2003); *Mapp v. Ohio*, 367 U.S. 643 (1961).  An officer may arrest a person without a warrant only if there is probable cause to believe that the person has committed or is committing an offense.  *Michigan v. DeFillippo*, 443 U.S. 31, 36 (1979).  Each case is determined on its specific facts and circumstances.  *Ornelas v. United States*, 517 U.S. 690, 695-96 (1996).  Those facts and circumstances will determine the Fourth Amendment's reach in a particular case.  *Terry v. Ohio*, 392 U.S. 1, 29 (1968).

A seizure occurs when the government ends a person's freedom of movement by intentionally applied means.  *Scott v. Harris*, 550 U.S. 372, 381 (2007); *Brower v. County of Inyo*, 489 U.S. 593, 596-97 (1989).  A claim of excessive force in the course of a seizure is properly analyzed under the Fourth Amendment's "objective reasonableness" standard.  *Scott*, 550 U.S. at 381; *Graham v. Connor*, 490 U.S. 386, 388 (1989).  This means that the Court must consider whether the officer's actions were objectively reasonable in light of the facts and circumstances of

---

[5] The first amended complaint omits counts three and four, which the Court found to be redundant in the original complaint.

the arrest, without regard to their underlying intent or motivation.  *Scott*, 550 U.S. at 381; *Graham*, 490 U.S. at 387.  The reasonableness of the type of force used is evaluated from the perspective of an officer on the scene and must include allowance for the fact that police officers are often forced to make a split-second determination of the amount of force necessary to make the arrest.  *Graham*, 490 U.S. at 387.

The first amended complaint alleges facts sufficient to state a cognizable claim that Defendant Schwartz used excessive force in arresting Plaintiff on December 3, 2012.

In addition to Defendant Schwartz's actions, however, the first amended complaint alleges that Defendants Christianson and Hughes had vicarious liability for Schwartz's actions.[6]  This portion of count one is not cognizable.

Section 1983 plainly requires an actual connection or link between each defendant's actions and the harm allegedly done to the plaintiff.  *See Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978); *Rizzo v. Goode*, 423 U.S. 362 (1976).  "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of §1983, if he does an affirmative act, participates in another's affirmative act or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made."  *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).   A plaintiff can establish each defendant's "requisite causal connection" either by detailing that defendant's direct, personal participation in an act or omission, or by demonstrating that the defendant knowingly set in motion a series of acts by others that the defendant knew or reasonably should have known would cause the others to inflict constitutional injury on Plaintiff.  A defendant cannot be liable under § 1983 unless an affirmative link or connection exists between that defendant's actions and the claimed injury to Plaintiff.   *May v. Enomoto*, 633 F.2d 164, 167 n. 3 (9th Cir. 1980); *Johnson*, 588 F.2d at 743.

---

[6] Defendants' vicarious liability is more fully addressed in Section VII, *infra*, which addresses the blanket claims of supervisory liability alleged in counts eleven and twelve.

No facts alleged in the first amended complaint create the requisite causal connection to link Hughes or Christianson to the beating coincident with Schwartz's arrest of Plaintiff.  The first amended complaint does not even try to allege a direct link.  Instead, the first amended complaint alleges that by refusing to respond to Plaintiff's complaints regarding crimes committed against him in Merced County by various Merced County officials, Defendants Hughes and Christianson intended to harass, intimidate, and coerce Plaintiff into not reporting the Merced County crimes. Even assuming those allegations to be true, discouraging Plaintiff from reporting crimes in Merced County to police in a Stanislaus County municipality is not tantamount to physically assaulting Plaintiff in the course of an arrest for threatening a police officer. The allegations are particularly far-fetched since Plaintiff could gain little by complaining of crimes in Merced County to the Patterson Police, who have no jurisdiction over crimes committed in Merced County.  *See* Cal. Penal Code § 830.1 (limiting the jurisdiction of county and municipal police officers).

Nor does the first amended complaint set forth any evidence that Defendants Christianson, Hughes, and Schwartz conspired to exercise excessive force against Plaintiff in the event he was arrested.  Such a conspiracy seems highly improbable, particularly since Defendant Schwartz did not seek out Plaintiff to arrest him.  Plaintiff flagged Schwartz down, and ultimately, Plaintiff uttered the threat that triggered his arrest.

The reasonableness of Detective Schwartz's response to Plaintiff's threatening statement is the only cognizable question set forth in claims one and two.  Count one is not cognizable as to any other Defendant.

The difference between counts one and two is that count one requests compensatory damages and count two requests exemplary damages.  "A plaintiff who establishes liability for deprivations of constitutional rights actionable under 42 U.S.C. § 1983 is entitled to recover compensatory damages for all injuries suffered as a consequence of those deprivations." *Borunda v. Richmond*, 885 F.2d 1384, 1389 (9th Cir. 1988).  Compensatory damages include the plaintiff's actual losses, mental

anguish and humiliation, impairment of reputation, and out-of-pocket losses. *Id.*; *Knudson v. City of Ellensburg*, 832 F.2d 1142, 1149 (9th Cir. 1987); *Chalmers v. City of Los Angeles*, 762 F.2d 753, 760-61 (9th Cir. 1985). "[D]amages in § 1983 actions are not to be assessed on the basis of the abstract 'value' or 'importance' of the infringed constitutional right." *Sloman v. Tadlock*, 21 F.3d 1462, 1472 (9th Cir. 1994).

Punitive (exemplary) damages are also available under § 1983. *See Pacific Mut. Life Ins. Co. v. Haslip*, 499 U.S. 1, 17 (1991); *Kentucky v. Graham*, 473 U.S. 159, 167 n. 13 (1985); *Dang v. Cross*, 422 F.3d 800, 807 (9th Cir. 2005); *Morgan v. Woessner*, 997 F.2d 1244, 1255 (9th Cir. 1993); *Cinevision Corp. v. City of Burbank*, 745 F.2d 560, 577 n. 21 (9th Cir. 1984). Punitive damages are awarded in the jury's discretion. *See Smith v. Wade*, 461 U.S. 30, 54 (1983); *Woods v. Graphic Communications*, 925 F.2d 1195, 1206 (9th Cir. 1991).

Both counts one and two state cognizable claims against Defendant Schwartz for excessive force in violation of the Fourth Amendment incident to Schwartz's arrest of Plaintiff. The Court should dismiss counts one and two as to all other Defendants.

**V.    Count Nineteen: Denial of Medical Treatment**

Count nineteen of the first amended complaint alleges that Defendants Schwartz, Hughes, and Christianson deliberately denied him medical treatment. Officer Schwartz, says the complaint, failed to transport Plaintiff directly to the hospital emergency room, instead driving over rough roads to cause Plaintiff unnecessary physical pain while verbally harassing him. The facts supporting count nineteen do not indicate denial of medical care, which Plaintiff received at the hospital before being transported to the jail, but delay of medical care intended to prolong the discomfort of Plaintiff's injuries. Accordingly, count nineteen is properly evaluated as an additional violation of the Fourth Amendment.

"[O]nce a seizure has occurred, it continues through the time the arrestee is in the custody of the arresting officers." *Robins v. Harum*, 773 F.2d 1004, 1010 (9th Cir. 1985). "Therefore, excessive

use of force by a law enforcement officer in the course of transporting an arrestee gives rise to a section 1983 claim based upon a violation of the Fourth Amendment." *Id.* "The trip to the police station is a 'continuing seizure' during which the police are obliged to treat their suspects in a reasonable manner." *Fontana v. Haskin*, 262 F.3d 871, 879-80 (9th Cir. 2001).

The verbal harassment alleged to have occurred in the course of the trip to the hospital is not actionable independent of any physical abuse alleged to have occurred at the same time.  "[V]erbal harassment or abuse . . . is not sufficient to state a constitutional deprivation under 42 U.S.C. § 1983."  *Yocum v. Kootenai County*, 2011 WL 2650217 at *8 (D. Idaho July 6, 2011) (No. CV09-546-REB) (*quoting Oltarzewski v. Ruggiero*, 830 F.2d 136, 139 (9th Cir. 1987)).  Verbal abuse may be relevant, however, in assessing the reasonableness of the officer's conduct in the course of the Fourth Amendment analysis.  *Yocum*, 2011 WL 2650217 at *8.

Count nineteen alleges a cognizable claim of excessive force in arrest in that Schwartz unduly prolonged the trip to the hospital to increase Plaintiff's pain and discomfort and to afford Schwartz additional time to abuse Plaintiff verbally.  Because no facts are alleged to support the claim that Hughes and Christianson denied or delayed necessary medical treatment, or harassed Plaintiff in the course of his being transported to the hospital and to jail, this claim is not cognizable and should be dismissed as to those two Defendants.

## VI.    Count Five: Policies and Practices

In count five, the first amended complaint alleges that City of Patterson, Patterson Police Services, Patterson Police Services of the Stanislaus County Sheriff's Department, Hughes, and Christianson promulgated the following policies and practices: (1) to employ police officers; (2) to authorize officers to cover up the use of excessive force; (3) to misinform the public that they could record officers in the performance of their duties; (4) to deny and prevent prompt medical care to arrestees; and (5) to verbally abuse detainees.  The complaint further alleges that these policies and practices encouraged and caused federal constitutional violations.

"Section 1983 provides for liability against any person acting under color of law who deprives another 'of any rights, privileges, or immunities secured by the Constitution and laws' of the United States. *Southern California Gas Co. v. City of Santa Ana*, 336 F.3d 885, 887 (9th Cir. 2003) (*quoting* 42 U.S.C. § 1983). Because § 1983 does not provide for vicarious liability, local governments may not be sued under § 1983 for an injury inflicted solely by an employee or agent. *Monell*, 436 U.S. at 693. Under § 1983, local governmental entities can be directly liable for monetary, declaratory, or injunctive relief only if the allegedly unconstitutional action occurred pursuant to a "policy statement, ordinance, or decision officially adopted and promulgated by that body's officers." *Neveu v. City of Fresno*, 392 F.Supp.2d 1159, 1171 (E.D. Cal. 2005).

To prevail on a § 1983 complaint against a local government entity, a Plaintiff must establish three elements: (1) The local government official intentionally violated the plaintiff's constitutional rights; (2) The violation arose from policy and custom and was not part of an isolated incident; and (3) A nexus links a specific policy or custom to the plaintiff's injury. *Monell*, 436 U.S. at 690-92. "Where a plaintiff claims that the municipality . . . has caused an employee to [violate the plaintiff's constitutional rights], rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee." *Board of County Comm'rs of Bryan County, Okla. v. Brown*, 520 U.S. 397, 405 (1997).

A policy may be defined as a deliberate choice by a municipal official with policy making authority, made from among various alternatives, to follow a course of action. *Waggy v. Spokane County, Washington*, 594 F.3d 707, 713 (9th Cir. 2010). "Official municipal policy includes the decisions of the government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick v. Thompson*, 131 S.Ct. 1350, 1359 (2011).

A policy may be one of action or inaction. *Id.* To allege that an "action" policy is unconstitutional, a claimant must set forth facts showing that his deprivation resulted from an

official policy or custom established by a municipal policymaker possessed with final authority to establish that policy." *Id.*, quoting *Erdman v. Cochise County, Ariz.*, 926 F.2d 877, 882 (9th Cir. 1991).  To prove that an "inaction" policy is unconstitutional, "a plaintiff can allege that through its omissions, the municipality is responsible for a constitutional violation committed by one of its employees." *Waggy*, 594 F.3d at 713 (*quoting Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006)).  A municipality's failure to train its employees is an example of a claim of omission or inaction by a municipal entity.  *City of Canton v. Harris*, 489 U.S. 378, 392 (1989).

Although the Patterson Police Department obviously employs officers to effectuate their function as the local law enforcement agency, no facts are alleged in the complaint that support Plaintiff's allegations of the remaining policies and practices.  An allegation of an action policy, such as Plaintiff's claims of policies (1) to authorize officers to cover up the use of excessive force; (2) to misinform the public that they could record officers in the performance of their duties; (3) to deny and prevent prompt medical care to arrestees; and (4) to verbally abuse detainees, calls for a complainant to allege an express policy or custom, or to set forth factual evidence to permit the inference that the policy exists.  *See Waggy*, 594 F.3d at 713-14.  The first amended complaint does not do so.

In addition, count five's contentions are factually implausible.  For example, the allegations of the amended complaint do not support a conclusion that Officer Schwartz covered up facts concerning his arrest of Plaintiff.  Although Officer Schwartz allegedly delayed in transporting Plaintiff to the hospital for treatment of his injuries, Officer Schwartz did, in fact, take Plaintiff for emergency room treatment before transporting him to jail.  Such conduct is inconsistent with a conclusion that Schwartz sought to cover-up the facts of an arrest that allegedly led to Plaintiff's being injured.

Similarly, the factual allegations in the complaint do not support the allegation that Patterson Police Services misinformed the public that they could record officers in the performance of their

duties.  Instead, the first amended complaint alleges (at page 7, ¶ 33) that, well before December 3, 2012, Officer Watkins advised Plaintiff that department policy precluded recording of officer's activities in performance of their duties.  The unnamed police officers who responded to Plaintiff's complaint against the FBI also informed Plaintiff of the department's policy against recording police officers performing their duties.  Doc. 13 at 10 ¶51.

Although the first amended complaint alleges that Officer Schwartz failed to promptly secure medical treatment for Plaintiff and verbally abused Plaintiff in the course of arrest, it includes no factual basis that either delay or verbal abuse was department practice or policy.  Allegations of random acts or single instances of municipal employee misconduct do not establish municipal policy or custom.  To the extent that claim five alleges that City of Patterson, Patterson Police Services, Patterson Police Services of the Stanislaus County Sheriff's Department, Hughes, and Christianson promulgated unconstitutional policies and practices, the claim is not cognizable and should be dismissed.

## VII.   Counts Eleven, Twelve, Sixteen, and Seventeen: Supervisory (*Respondeat Superior*) Liability (Federal Claims)[7]

In count eleven, Plaintiff contends that, since Defendants Schwartz, Hughes, and Christianson were acting within the scope of their employment, Defendants City of Patterson, Patterson Police Services, and Stanislaus County Sheriff's Department are liable for compensatory damages for Schwartz, Hughes, and Christianson's intentional torts and the excessive force used in the arrest.  In count twelve, Plaintiff contends that because Defendants City of Patterson, Patterson Police Services, and Stanislaus County Sheriff's Department authorized Defendants Schwartz, Hughes, and Christianson to use excessive force and to commit intentional torts, the City of Patterson, Patterson Police Services, and Stanislaus County Sheriff's Department are liable for

---

[7] In counts eleven, twelve, sixteen, and seventeen, Plaintiff also alleges supervisory liability for state torts.  Supervisory liability under California law will be discussed in Section X.B., *infra*.

exemplary damages for "defendants'"[8] malicious conduct.  In counts sixteen and seventeen, the first amended complaint alleges supervisory liability arising from Defendants City of Patterson, Patterson Police Services, and Stanislaus County Sheriff's Department failure to train police officers, including Schwartz, Hughes, and Christianson.

Supervisory personnel are generally not liable under § 1983 for the actions of their employees under a theory of *respondeat superior*.  *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  For defendants in supervisory positions, a plaintiff must specifically allege a causal link between each defendant and his claimed constitutional violation.  *See Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979); *Mosher v. Saalfeld*, 589 F.2d 438, 441 (9th Cir. 1978).

To state a claim for relief under § 1983 for supervisory (*respondeat superior*) liability, a plaintiff must allege facts indicating (1) that the plaintiff possessed a constitutional right of which he or she was deprived; (2) that the municipality had a policy; (3) that the policy amounted to a deliberate indifference to the plaintiff's constitutional right; and (4) that the policy was the moving force behind the constitutional violation.  *Plumeau v. School District No. 40 County of Yamhill*, 130 F.3d 432, 438 (9th Cir. 1997).  The plaintiff bears the burden of proof and must identify facts that would allow the court to conclude that the municipality had such a policy or practice.  *Board of County Comm'rs of Bryan County, Okla. v. Brown*, 520 U.S. 397, 404 (1997).

Inadequate training may qualify as a constitutional violation under § 1983 if it is sufficiently inadequate to constitute "deliberate indifference" to the rights of persons with whom the police come in contact.  *City of Canton*, 489 U.S. at 380.  A municipality is deliberately indifferent when "the need for more or different training is so obvious, and the inadequacy [of current procedure] so likely to result in the violation of constitutional rights, that the policy makers of the city can reasonably be said to have been deliberately indifferent to the need."  *Id.* at 396.

---

[8] The first amended complaint's use of the term "defendant" in this context is ambiguous.  It is unclear whether the reference is to all Defendants or only to Defendants Schwartz, Hughes, and Christianson .

For a municipality to be liable under § 1983, a plaintiff must allege facts showing either that "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers,"  or that the discriminatory governmental practices are so persistent and widespread as to constitute custom or usage with the force of law.  *Monell*, 436 U.S. at 690-91.  "To state a claim under *Monell*, a party must identify the challenged policy or custom, explain how it was deficient, explain how it caused the plaintiff harm, and reflect how it "amounted to deliberate indifference, i.e. [,] explain . . . how . . . the deficiency involved was obvious and the constitutional injury was likely to occur.'" *Jarreau-Griffin v. City of Vallejo*, 2013 WL 6423379 at * 5 (E.D. Cal. Dec. 9, 2013) (No. 2:12-cv-02979-KJM-KJN) (*quoting Young v. City of Visalia*, 687 F.Supp.2d 1141, 1149 (E.D. Cal. 2009)). Plaintiff must allege "sufficient . . . . underlying facts to give fair notice and to enable the opposing party to defend itself adequately." *AE ex rel. Hernandez v. County of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012).  The allegations may not simply recite the elements for *Monell* liability without alleging the specific facts of the particular claim being alleged.  *Jarreau-Griffin*, 2013 WL 6423379 at *6.

Although claims eleven, twelve, sixteen, and seventeen allege supervisory liability for Defendant Schwartz's use of excessive force in violation of the Fourth Amendment, they do not set forth a cognizable claim of supervisory liability for any federal claim.  Accordingly, the Court should dismiss that portion of claims eleven, twelve, sixteen, and seventeen alleging supervisory liability for the use of excessive force in violation of the Fourth Amendment.

**VIII.   Counts Sixteen and Seventeen: Failure to Train (Federal Rights)**

Counts sixteen and seventeen allege that Defendants City of Patterson, Patterson Police Department, and the Stanislaus County Sheriff's Department failed to provide adequate training and supervision to its officers, with deliberate disregard for the "rights of private citizens, including Plaintiff."  This section addresses allegations of these defendants' failure to train Patterson police officers regarding the federal constitutional rights of private citizens.

Analyzing claims against municipal entities for failure to train employees regarding federal constitutional rights is a subsection of the *Monell* analysis.  Local governments may not be sued under § 1983 for an injury inflicted solely by an employee or agent.  *Monell*, 436 U.S. at 693.  In limited circumstances, however, local governments may be held liable under § 1983 for inadequate training of an employee "when the failure to train amounts to deliberate indifference to the rights of persons with whom the police come in contact."  *City of Canton*, 489 U.S. at 388.  Count seventeen of the first amended complaint addresses this standard merely by restating the legal standard established in *Harris*.  The allegation of a cognizable claim "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action."  *Twombly*, 550 U.S. at 555-6.

No factual allegations in the first amended complaint support the conclusory allegation that Defendants City of Patterson, Patterson Police Department, and the Stanislaus County Sheriff's Department failed to train Patterson police officers.  "A municipality's culpability for deprivation of rights is at its most tenuous where the claim turns on a failure to train."  *Connick*, 131 S.Ct. at 1359.  To prove deliberate indifference, a complaint must prove that a municipal actor disregarded a known or obvious consequence of his or her actions.  *Bryan County*, 520 U.S. at 410.

When municipal policymakers are on actual or constructive notice that an omission in their training program causes employees to violate citizens' constitutional rights, the municipality is deliberately indifferent if it fails to act to correct the omission.  *Id.*  Failure to act in light of notice that its training program results in constitutional violations "is the functional equivalent of a decision by the city itself to violate the Constitution."  *Canton*, 489 U.S. at 395.

The standard is deliberately high.  Applying a less demanding standard in failure-to-train cases would circumvent the rule against *respondeat superior* liability of municipalities.  *Id.* at 392.  "[M]unicipal liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by [the relevant] officials."  *Penbauer v.*

19

*City of Cincinnati*, 475 U.S. 469, 483 (1986). To state a cognizable claim, a plaintiff must allege specific facts supporting the conclusion that the municipal entity had actual or constructive notice that their training program (or lack thereof) resulted in their employees' violating citizens' federal constitutional rights and that the municipality made a deliberate choice to train (or not to train) its employees as a deliberate decision drawn from its consideration of various alternatives.

In the face of these very specific and demanding requirements, the first amended complaint alleges nothing more than a completely unsupported legal conclusion that Defendants City of Patterson, Patterson Police Department, and the Stanislaus County Sheriff's Department failed to train Patterson police officers. A conclusory pleading, unsupported by factual allegations is insufficient to state a claim. *Iqbal*, 556 U.S. at 678 (2009); *Twombly*, 550 U.S. at 555. Since counts sixteen and seventeen are not cognizable, the Court should dismiss them.

## IX.   Count Six: Conspiracy

In its screening of the original complaint in this action, the Court found this claim to be uncognizable and explained that, to state a cognizable claim of conspiracy, the first amended complaint needed to allege factual evidence that the Schwartz, Hughes, and Christenson conspired to violate Plaintiff's civil rights. Although the original complaint alleged that Schwartz stated that Watkins had been given "specific instructions as to how to deal with [Plaintiff]," nothing in the complaint indicated the nature of those instructions or suggested that they in any way contemplated the violation of Plaintiff's civil rights. If Plaintiff elected to amend count six, said the Court, the amended complaint must include factual allegations to support the conclusion that those instructions contemplated violation of his civil rights as well as facts indicating a common agreement between Schwartz, Hughes, and Christianson.

Count six of the first amended complaint sets forth no facts revealing a common agreement between Defendants Schwartz, Hughes, and Christianson to violate Plaintiff's civil rights. Instead, it simply sets forth selected episodes in Plaintiff's longstanding disputes with officials in Merced

20

County and the City of Los Banos, and then concludes, with no factual basis, that because Plaintiff had informed Defendants Schwartz, Hughes, and Christianson of those disputes, Defendants Schwartz, Hughes, and Christianson had joined the pre-existing conspiracy.[9]

To state a cognizable conspiracy claim under California law, a plaintiff must allege (1) the formation and operation of the conspiracy, (2) the wrongful act or acts done pursuant to the conspiracy, and (3) the damage resulting from the act or acts. *Wasco Products, Inc. v. Southwall Technologies, Inc.*, 435 F.3d 989, 992 (9th Cir. 2006). In the context of claims brought under § 1983, the complaint must allege material facts that show an agreement among the alleged conspirators to deprive the party of his or her civil rights. *Margolis v. Ryan*, 140 F.3d 850, 853 (9th Cir. 1998). The first amended complaint does not do so.

A conspiracy claim brought under § 1983 requires proof of "'an agreement or 'meeting of the minds' to violate constitutional rights," *Franklin v. Fox*, 312 F.3d 423, 441 (9th Cir. 2002) (*quoting United Steel Workers of Amer. v. Phelps Dodge Corp.,* 865 F.2d 1539, 1540-41 (9th Cir.)), as well as an "actual deprivation of constitutional rights resulting from the alleged conspiracy." *Hart v. Parks*, 450 F.3d 1059, 1071 (9th Cir. 2006) (*quoting Woodrum v. Woodward County, Okla.,* 866 F.2d 1121, 1126 (9th Cir. 1989)). "To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy.'" *Franklin*, 312 F.3d at 441, *quoting United Steel Workers*, 865 F.2d at 1541.

The allegations in the first amended complaint do not satisfy the elements of conspiracy. Claim six does not state a cognizable claim and should be dismissed.

## X. State Claims

In counts seven through eighteen, Plaintiff alleges various claims under California state law. Section 1983 does not provide a cause of action for violations of state law. *See Weilburg v. Shapiro*,

---

[9] No facts alleged in the first amended complaint support a conclusion that Plaintiff had any direct interaction with Defendant Christianson on any matter at any point.

488 F.3d 1202, 1207 (9th Cir. 2007); *Galen v. County of Los Angeles*, 477 F.3d 652, 662 (9th Cir. 2007); *Ove v. Gwinn*, 264 F.3d 817, 824 (9th Cir. 2001); *Sweaney v. Ada County, Idaho*, 119 F.3d 1385, 1391 (9th Cir. 1997); *Lovell v. Poway Unified School Dist.,* 90 F.3d 367, 370 (9th Cir. 1996); *Draper v. Coombs*, 792 F.2d 915, 921 (9th Cir. 1986); *Ybarra v. Bastian*, 647 F.2d 891, 892 (9th Cir.), *cert. denied*, 454 U.S. 857 (1981).  Pursuant to 28 U.S.C. § 1367(a), however, in any civil action in which the district court has original jurisdiction, the district court "shall have supplemental jurisdiction over all other claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III," except as provided in subsections (b) and (c).

"[O]nce judicial power exists under § 1367(a), retention of supplemental jurisdiction over state law claims under 1367(c) is discretionary."  *Acri v. Varian Assoc., Inc.,* 114 F.3d 999, 1000 (9th Cir. 1997).  "The district court may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367 (c)(3).  The Supreme Court has cautioned that "if the federal claims are dismissed before trial . . . the state claims should be dismissed as well."  *United Mine Workers of Amer. v. Gibbs*, 383 U.S. 715, 726 (1966).  If, later in the course of this case's litigation, no federal claims remain, the Court may dismiss the case for lack of federal jurisdiction.

### A.    California Tort Claims Act

As a condition precedent to filing tort claims against state government entities, officials, or employees, a plaintiff must comply with the notice provisions of the California Tort Claims Act (California Government Code § 945, *et seq.*), which requires the timely presentation of a written claim.  A plaintiff may not pursue a tort claim against such defendants in a civil action without alleging his or her compliance with the notice requirements.  *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 627 (9th Cir. 1988).  The original complaint alleged that plaintiff filed a claim in March 2013 but did not allege that the scope or nature of the claim.  Although the order screening the original complaint directed Plaintiff to allege more fully the nature and scope of the state tort

claim filed, the first amended complaint appears to omit totally any reference to it.  Plaintiff is advised that if one or more of the Defendants raise this issue in their responsive pleading(s) and if Plaintiff fails to prove that he provided the requisite statutory notice, the Court may dismiss one or more state claims at that time.

**B.**        **Counts Eleven, Twelve,  Fifteen, Sixteen, and Seventeen: Supervisory Liability**

Except for changing the designation from Patterson Police Department to Patterson Police Services[10] in the first amended complaint, counts eleven, twelve (in part), fifteen, sixteen, and seventeen remain unchanged from the original complaint.  In counts eleven and twelve, the first amended complaint alleges that Defendants City of Patterson, Patterson Police Services, and the Stanislaus County Sheriff's Department are liable for the intentional torts of Defendants Schwartz, Hughes, and Christianson.  In counts fifteen and sixteen, the first amended complaint alleges that Defendants City of Patterson, Patterson Police Services, and the Stanislaus County Sheriff's Department are liable for compensatory damages to Plaintiff under the theory of *respondeat superior* for the negligence of Defendants Schwartz, Hughes, and Christianson. In Counts sixteen and seventeen, the first amended complaint alleges that Defendants City of Patterson, Patterson Police Services, and the Stanislaus County Sheriff's Department are liable for their negligent failure to provide training, supervision, and control of defendants.

Under California law, "[a] public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative."  California Government Code § 815.2(a).  Thus, in contrast to the unavailability of supervisory liability for Schwartz's federal constitutional violations, Plaintiff may seek to hold City of Patterson, Patterson Police Department, and the Stanislaus County Sheriff's

---

[10] Peculiarly, this section of the first amended complaint consistently refers to "Patterson Police Services Patterson Police Services."  Whether the duplication was intentional is not clear.

Department liable for torts committed in violation of California state law.  Since this screening has determined that several of the state tort claims against Defendant Schwartz are cognizable, the vicarious liability claims against these public entities may proceed with regard to those claims.  *Bass v. City of Fremont*, 2013 WL 891090 at * 8 (N.D. Cal. March 8, 2013) (No. C12-4943 TEH)

**C.**      **Counts Seven and Eight: Assault and Battery**

Counts seven and eight of the first amended complaint are not changed from the original complaint.  These claims allege that through the beating and verbal abuse incident to Plaintiff's arrest, Defendants Schwartz, Hughes, and Christianson committed assault and battery.  Count seven seeks compensatory damages; count eight seeks exemplary damages.

As the Court previously determined, since the claim against Defendant Schwartz for violating the 4th Amendment by using excessive force in the course of arrest is cognizable, the assault and battery claim against him is also cognizable.  Because the complaint alleges no facts to support claims of assault or battery against Hughes or Christianson, those claims are not cognizable and should be dismissed.

**D.**      **Counts Nine and Ten: Intentional Infliction of Emotional Distress**

In counts nine and ten, the first amended complaint alleges that through the beating and verbal abuse incident to his arrest, Defendants Schwartz, Hughes, and Christianson intentionally inflicted emotional distress on Plaintiff.  Count nine seeks compensatory damages; count ten seeks exemplary damages.

As was the case for prior claims, the complaint includes no factual allegations that Hughes or Christianson participated in the beating and verbal abuse of Plaintiff incident to his arrest on December 3, 2012.  Accordingly, counts nine and ten do not directly state cognizable claims against Hughes or Christianson and should be dismissed as to those two defendants.

To state a cognizable claim for intentional infliction of emotional distress, a plaintiff must allege facts supporting the following elements: (1) the defendant engaged in extreme and outrageous

24

conduct with the intent to cause, or with reckless disregard for the probability of causing, emotional

distress; (2) the plaintiff suffered extreme or severe emotional distress; and (3) the defendant's

extreme and outrageous conduct was the actual and proximate cause of the plaintiff's extreme or

severe emotional distress. *Yun Hee So v. Sook Ja Shin*, 212 Cal.App.4th 652, 671 (2013).

"Outrageous conduct" is conduct that is intentional or reckless and so extreme as to exceed

"all bounds of decency in a civilized community." *Id.* "Where reasonable persons may differ, the

trier of fact is to determine whether the conduct has been sufficiently extreme and outrageous to

result in liability." *Tekle v. United States*, 511 F.3d 839, 855 (9th Cir. 2007). When an officer's

actions incident to the plaintiff's arrest are reasonable as a matter of law, the plaintiff cannot

establish that the officer engaged in extreme or outrageous conduct. *Long v. City and County of

Honolulu, Hawaii*, 511 F.3d 901, 908 (9th Cir. 2007). *See also Mejia v. City of San Bernardino*,

2012 WL 1079341 at * 13 (C.D. Cal. Mar. 30, 2012) (No. EDCV 11-00452 VAP).

"Generally, a plaintiff may not recover for intentional infliction of emotional distress unless

the distress suffered has been extreme." *Hailey v. California Physicians' Service*, 158 Cal.App.4th

452, 476 (2007). Severe distress is emotional distress that is "of such substantial quantity or

enduring quality that no reasonable man in a civilized society should be expected to endure it." *Id.

See, e.g., Lawler v. Montblanc North America LLC*, 704 F.3d 1235, 1246 (9th Cir. 2013) (holding

that allegations of anxiety, sleeplessness, upset stomach, and occasional muscle twitches were not

sufficient to establish severe emotional distress); *Hughes v. Pair*, 46 Cal.4th 1035, 1051 (2009)

(allegations of discomfort, worry, anxiety, upset stomach, concern, and agitation insufficient); *Wong

v. Tai Jing*, 189 Cal.App.4th 1354, 1376 (2010) (allegations of emotional upset, lost sleep, stomach

upset, and general anxiety insufficient); *Saari v. Jongordon Corp.*, 5 Cal.App.4th 797, 806-07 (1992)

(complete disruption of life and diagnosis of depression sufficient); *Kelly-Zurian v. Wohl Shoe Co.*,

22 Cal.App.4th 397, 410 (1994) (anxiety, chest tightness, heart palpitations, panic attacks,

depression, insomnia, and diagnosis of post-traumatic stress disorder sufficient); *Bass*, 2013 WL

25

891090 at * 7 (allegations of severe emotional and mental stress, fear, terror, anxiety, humiliation, embarrassment, anger, indignity, loss of freedom, and sense of helplessness insufficient).

Conclusory allegations that a plaintiff suffered severe emotional distress are insufficient to state a cognizable claim. *See Steel v. City of San Diego*, 726 F.Supp.2d 1172, 1191-92 (S.D. Cal. 2010). To state a cognizable claim, the complaint must include factual allegations describing the nature of the severe emotional distress that the plaintiff is alleged to have experienced. *Harvey G. Ottovich Revocable Living Trust Dated May 12, 2006 v. Washington Mutual, Inc.*, 2010 WL 3769459 at *6 (N.D. Cal. September 22, 2010) (No. C 10-02843 WHA).

Because the allegations in the original complaint were wholly conclusory, the Court dismissed counts nine and ten with leave to amend. The allegations in the first amended complaint attempt to flesh out Plaintiff's claims for intentional infliction of emotional distress. Unfortunately, they attempt to do so by confusing the incident that is the subject of this case, Officer Schwartz's alleged use of excessive force in arresting Plaintiff for threatening a police officer, with Plaintiff's claims against employees and officials in Merced County and the City of Los Banos, which are the subject of his other federal cases. The first amended complaint alleges no evidence whatsoever supporting the speculative conclusion that the Defendants in this case were somehow tied to the incidents in Merced County and the City of Los Banos.

When the Court disregards the allegations relating to the unrelated incidents and speculative accusations of conspiracy, all that remains are legal conclusions that "Plaintiff suffered extreme and severe emotional distress," "suffered extreme stress, lack of sleep, anxiety, headaches, and emotional duress, " and "Defendant's extreme and outrageous conduct was the actual and proximate cause of the plaintiff's extreme or severe emotional distress. Yun Hee So v. Sook Ja Shin, 212 Cal.App.4[th] 652, 671 (2013)." Doc. 13 at 25-26. Entangling Plaintiff's mental and physical distress to the unrelated incidents in Merced County and the City of Los Banos, the vague and conclusory allegations of physical and emotional distress cloud the allegations as to Defendant Schwartz. In the

absence of specific allegations of diagnosis and treatment of any physical and mental sequelae and their timing, the first amended complaint fails to tie any of the alleged after-effects to the arrest that is the subject of this suit.  Since the first amended complaint appears to state a claim of intentional infliction of emotional distress against Schwartz when it is taken as a whole, however, the undersigned recommends that the Court permit the claim of intentional infliction of emotional distress against Defendant Schwartz to proceed.

**E.      Counts Thirteen and Fourteen: Negligence**

In screening the original complaint, the Court concluded that counts thirteen and fourteen stated cognizable claims against Defendant Schwartz, but not against Defendants Hughes and Christianson.  Nonetheless, the first amended complaint repeats the allegations that Defendants Schwartz, Hughes, and Christianson acted negligently in using excessive force when arresting Plaintiff.

The sole change in the first amended complaint is strengthening the language regarding the Defendants' duties to Plaintiff as police officers.  The complaint still includes no factual allegations that Hughes or Christianson participated in Plaintiff's arrest or personally touched him.  Accordingly, neither Hughes nor Christianson could have acted negligently in the course of Plaintiff's arrest.  Counts thirteen and fourteen do not state cognizable claims against Hughes or Christianson, and must be dismissed as to those two Defendants.

Under California law, the elements of negligence are (1) a legal duty to use due care; (2) a breach of that legal duty; and (3) the breach as the proximate or legal cause of the resulting injury.  *Evan F. v. Hughson United Methodist Church*, 8 Cal.App.4th 828, 834 (1992).  Whether Defendant Schwartz breached a legal duty to use different tactics or less force in arresting Plaintiff requires the same analysis as determining whether his actions were reasonable for Fourth Amendment purposes.  *Hernandez v. City of Pomona*, 46 Cal. 4th 501, 513 (2009).  *See also Robinson v. Solano County*, 278

27

F.3d 1007, 1016 (9th Cir. 2002).  Thus, Plaintiff also states a cognizable claim against Schwartz for negligence in the use of excessive force in Plaintiff's arrest.

The Court should allow claims thirteen and fourteen to proceed against Defendant Schwartz, but dismiss these claims as to Defendants Christianson and Hughes.

### F.        Count Eighteen (in part): Malicious Abuse of Process

In its prior screening order, the Court dismissed with prejudice that portion of count eighteen alleging malicious abuse of process.  The Court found that the claim was not cognizable because Defendants Schwartz, Hughes, and Christianson are immune from liability pursuant to California Government Code §§ 815.2(d) and 821.6.  The first amended complaint's attempt to revive a claim of malicious abuse of process by contending, at paragraph 177, that Defendants Schwartz, Hughes, and Christianson conspired with Merced County District Attorney Larry Morse is neither supported by factual allegations nor sufficient to circumvent the immunity provided by California law.  The Court should restate the dismissal of the malicious abuse of process claim set forth in count eighteen.

### G.        Count Eighteen (in part): False Arrest or False Imprisonment

In its prior screening order, the Court found the claim of false arrest or imprisonment[11] cognizable against Defendant Schwartz.  It dismissed the claim as to Defendants Hughes and Christianson, however, since no factual allegations linked them to Plaintiff's arrest or imprisonment.  Completely restating count eighteen's claim of false arrest, the first amended complaint attempts to revive the false imprisonment claim by alleging that Schwartz, Hughes, and Christianson falsely arrested and imprisoned Plaintiff to further a conspiracy with Merced County District Attorney Larry Morse.

No facts alleged in the first amended complaint support the claim that Hughes and Christianson conspired with Morse or any other Merced County official or employee. Nothing in the

---

[11] The prior screening order found that claims of false arrest and false imprisonment are variations of the same tort.  *See Martinez v. City of Los Angeles*, 141 F.3d 1373, 1379 (9th Cir. 1998).

complaint links Defendants Hughes and Christianson to Plaintiff's arrest or imprisonment. According to the facts, only Schwartz arrested Plaintiff and transported him to the County Jail, at which point Plaintiff remained in custody until bail was set by judicial process.  In the absence of any factual allegations linking Hughes or Christianson to Plaintiff's arrest and detention, the complaint fails to state a cognizable claim against either.

This count states a cognizable claim against Defendant Schwartz only.   The Court should dismiss the claim of false arrest against Hughes and Christianson as not cognizable.

## XI.   Conclusion and Recommendation

As discussed above and summarized in the order below, only certain counts within Plaintiff's complaint state cognizable claims and those claims are presently cognizable against less that all defendants named by Plaintiff as liable under those claims.  The undersigned recommends that the District Court finalize the screening process, concluding the following:

1.   Counts one and two, alleging a § 1983 claim of the use of excessive force in the course of arrest in violation of the Fourth Amendment, state cognizable claims against Defendant Schwartz and should proceed;

2.   Counts one and two, alleging § 1983 claims of the use of excessive force in the course of arrest in violation of the Fourth Amendment, do not state cognizable claims against Defendants Hughes and Christianson, and should be dismissed as to Defendants Hughes and Christianson;

3.   Counts three and four (omitted from the first amended complaint), alleging claims under an unidentified statute other than § 1983 for the use of excessive force in the course of arrest, did not state a cognizable claim against any Defendant and were dismissed with leave to amend in the prior screening order.  Because Plaintiff did not amend claims three and four, their dismissal should be restated;

4.   Count five, alleging § 1983 claim that Defendants City of Patterson, Patterson Police Services, Patterson Police Services of the Stanislaus County Sheriff's Department, Hughes, and Christianson promulgated policies and practices intended to encourage and cause federal constitutional violations, fails to state a cognizable claim and should be dismissed;

5.   Count six, alleging conspiracy to violate Plaintiff's civil rights under § 1983 or California law or both, fails to state a cognizable claim against any Defendant and should be dismissed;

6.   Counts seven and eight, alleging assault and battery under California law, state cognizable claims against Defendant Schwartz and should be permitted to proceed;

7.   Counts seven and eight, alleging assault and battery under California law, do not state cognizable claims against Defendants Hughes and Christianson, and should be dismissed;

8.   Counts nine and ten, alleging intentional infliction of emotional distress under California law, state a cognizable claim against Defendant Schwartz and should be permitted to proceed against him;

9.   Counts nine and ten, alleging intentional infliction of emotional distress under California law, do not state a cognizable claim against Defendants Hughes or Christianson and should be dismissed as to those Defendants;

10.   Counts eleven and twelve, alleging federal claims of supervisory liability under 42 U.S.C. § 1983 are not cognizable as to any Defendant and should be dismissed;

11.   Counts eleven, twelve, fifteen, sixteen, and seventeen, alleging *respondeat superior* liability against Defendants City of Patterson, Patterson Police Services, and Stanislaus County Sheriff's Department, with regard the intentional torts (state claims) of Defendant Schwartz, are cognizable and should be permitted to proceed;

12.   Counts thirteen and fourteen, alleging negligence in the course of arrest, state a cognizable claim against Defendant Schwartz and should be permitted to proceed;

13.   Counts thirteen and fourteen, alleging negligence in the course of arrest, do not state cognizable claims against Defendants Hughes and Christianson, and should be dismissed;

14.   Counts sixteen (in part) and seventeen (in part), with regard to the allegation of failure to provide adequate training with regard to the federal rights of private citizens, is not cognizable and should be dismissed;

15.   Count eighteen (in part), alleging malicious abuse of process, is not cognizable because Defendants Schwartz, Hughes, and Christianson are immune from liability pursuant to California Government Code §§ 815.2(d) and 821.6, and should be dismissed with prejudice;

16.   Count eighteen (in part), alleging false arrest or false imprisonment, states a cognizable claim against Defendant Schwartz and should be permitted to proceed;

17.   Count eighteen (in part), alleging false arrest or false imprisonment, does not state cognizable claims against Defendants Hughes and Christianson, and should be dismissed;

18.   Count nineteen, alleging denial of medical treatment, states a cognizable § 1983 claim of the use of excessive force in the course of arrest in violation of the Fourth Amendment against Defendant Schwartz;

19.   Count nineteen, alleging denial of medical treatment, does not state a cognizable § 1983 claim of the use of excessive force in the course of arrest in violation of the Fourth Amendment against Defendants Hughes and Christianson, and should be dismissed as to those defendants.

1   These findings and recommendations are submitted to the Honorable Lawrence J. O'Neill,

2   United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule

3   72-304 of the Local Rules of Practice for the United States District Court, Eastern District of

4   California.  Within fourteen (14) days after being served with a copy, Plaintiff may file written

5   objections with the court.  Such a document should be captioned "Objections to Magistrate Judge's

6   Findings and Recommendations."  The Court will then review the Magistrate Judge's ruling

7   pursuant to 28 U.S.C. § 636(b)(1)(C). Plaintiff advised that failure to file objections within the

8   specified time may waive the right to appeal the District Court's order.  *Martinez v. Ylst*, 951 F.2d

9   1153 (9th Cir. 1991).

10

11

12   IT IS SO ORDERED.

13   Dated:   __June 27, 2014__                         _____/s/ **Sandra M. Snyder**
                                                              UNITED STATES MAGISTRATE JUDGE

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28