**UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| EUGENE FORTE,<br><br>              Plaintiff,<br><br>     v.<br><br>TIMOTHY SCHWARTZ,<br><br>              Defendant. | **1:13-cv-1980-LJO-MJS**<br><br>**PRETRIAL ORDER**<br><br>**Motions *in Limine***<br>**Filing Deadline:      January 4, 2017**<br><br>**Motions *in Limine***<br>**Response Deadline:  January 11, 2017**<br><br>**Motions *in Limine***<br>**Hearing:            Date: January 30, 2017**<br>                     **Time: 1:30 p.m.**<br>                     **Dept.: 4 (LJO)**<br><br>**Jury Trial:          Date: February 7, 2017**<br>**(2-3 Day Est.)      Time:  8:30 a.m.**<br>                     **Dept.: 4 (LJO)** |

The Court conducted a telephonic pretrial conference on December 15, 2016. Plaintiff Eugene Forte appeared pro se. Dan Farrar appeared on behalf of Defendant Timothy Schwartz. Pursuant to Federal Rule of Civil Procedure 16(e), the Court issues this final pretrial order.

## I.  SUMMARY

This case concerns whether Defendant's arrest of Plaintiff on December 3, 2012, was lawful.

## II.  ISSUES

**A.      JURISDICTION AND VENUE**

The case arises under 42 U.S.C. § 1983 and therefore this Court has jurisdiction pursuant to 28 U.S.C. § 1331. Venue is proper in the Eastern District of California under 28 U.S.C. § 1391 because the incidents at issue occurred in Stanislaus County, California, and Defendant is located in Stanislaus County.  There is no dispute concerning jurisdiction or venue.

**B.      JURY TRIAL**

Plaintiff has made a timely demand for a jury trial of all of the issues in this action.

**C.      ESTIMATED LENGTH OF TRIAL**

Plaintiff estimates the trial will last 8-10 days. Defendant estimates 2-3 days. The Court will reserve 2-3 days for trial.

**D.      TRIAL DATE**

Trial will commence **February 7, 2017** at **8:30 a.m.** before U.S. Chief District Judge Lawrence J. O'Neill in Department 4 (LJO). Due to this Court's impacted trial calendar, the parties are encouraged to consent to the conduct all further proceedings before a U.S. Magistrate Judge. The parties are further notified that a criminal trial before Chief Judge O'Neill is set for February 7, 2017, and will take precedence over theirs. Accordingly, the trial in this case will trail the criminal trial and will not proceed unless and until that matter has resolved.

**E.      UNDISPUTED FACTS/STIPULATIONS**

The parties do not stipulate to any facts.

Undisputed Facts According to Plaintiff:

   a.   Plaintiff publishes and writes the Badger Flats Gazette (online at BadgerFlats.com) that reports on government malfeasance, public official and judicial corruption primarily in Merced, Monterey, Stanislaus, Fresno Counties and the state of California.

   b.   Plaintiff was a certified candidate in the 2003 California Governor Recall Race running on the platform of exposing public official and judicial corruption.

c. On September 25th, 2012, plaintiff wrote and published on the Badger Flats Gazette, "De-railing a Conspiracy:  Demand Jury Competency Trial".

d. On September 26th, 2012, plaintiff wrote and published on the Badger Flats Gazette, "MERCED SUPERIOR COURT "INCOMPENTENCY FORM" (GET IT_)".

e.  On September 27th, 2012, plaintiff wrote and published on the Badger Flats Gazette, "INDICTMENTS FOR PUBLIC OFFICIALS".

f.  On September 27th, 2012, plaintiff wrote and published on the Badger Flats Gazette, "Patterson PD Chief Ordered to aid Merced Cabal?" with links to an open -letter of September 27th, 2012 to Chief Tori Hughes.

g. On September 30th, 2012, plaintiff wrote and published on the Badger Flats Gazette, "STAR CHAMBER: GET BFG PUBLISHER DECLARED CRAZY".

h. On October 2nd, 2012, plaintiff wrote and published on the Badger Flats Gazette, "CONSPIRACY TO DISMISS CASE WITHOUT TRIAL".

i. On October 3rd, 2012, plaintiff wrote and published on the Badger Flats Gazette, "DA MORSE CABAL REPORTED TO FEDERAL JUDGE ANTHONY ISHII".

j. On November 1st, 2012, plaintiff wrote and published on the Badger Flats Gazette, "STANISLAUS DA BIRGET FLADAGER BACK DATES LETTER".

k. On May 13, 2013, plaintiff wrote and published on the Badger Flats Gazette, "Publisher Attacked for Exposing CA Public Corruption".

l. On December 3, 2012, defendant Timothy Schwartz was on duty as a Stanislaus County Sheriff's Office deputy, assigned to patrol Patterson, CA.  At approximately 8:29 p.m. he was flagged down by plaintiff.

m. The interaction of December 3rd, 2012 between plaintiff, defendant, and Deputy Watkins was videotaped by plaintiff's wife (and audio recorded by plaintiff).  The complete video and audio

of the interaction was provided to defendants wherein Schwartz asked Forte "Why do you keep on coming back to us if we're your problem?" Forte responded, "What would you like me to do, get a gun and shoot you guys? I'm certainly not going to do that."

n.  The defendant took plaintiff into custody, arresting him on charges of violating PC 71, threatening a public employee, and PC 148(a)(1), resisting, obstructing and delaying an officer in the performance of his duties. (PD Report #P12009957).

o.  Defendant Schwartz transported plaintiff to Doctors Medical Center in Modesto. He was cleared for booking and taken to the Stanislaus County jail where he was booked.

p.  The December 3rd, 2012 Patterson Police Report #P12009957 was submitted by Defendant Deputy Schwartz to the Stanislaus County DA. Deputy Randall Watkins authored a supplemental report to the PD Report #P12009957. Deputy Watkins requested that his supplemental report be sent to the District Attorney's Office along with Deputy Schwartz' original investigation for review.

q.  Deputy Schwartz stated in his report, "Eugene Forte was not satisfied with the answers I was providing him with. He then repeated the following to me in essence, 'Do I have to say I'm going to get a gun and shoot you in order to get some service?' Given the increasingly violent working conditions law enforcement officers are constantly faced with on a daily basis, in conjunction with the obvious officer safety concerns created by G. Forte's deranged psychological/psychiatric behavior of late, I became immediately threatened and concerned for my own personal safety." (PD Report #P12009957, Pg. 5)

r.  On January 20th, 2013, Dr. Richard A. Blak filed a "Psychiatric Evaluation" concerning plaintiff in the competency proceeding in Merced Superior Court cases CRL001412 and CRL003409, *State vs. Eugene Forte*, stating in part that, "Dr. Blak was able to recall that he had a conversation with Mr. Dumars relative to the fact that Mr. Forte had some sort of contact with

the Patterson Police Department early in December.  As it turns out, that contact was on or

about 12/03-12." (Dr. Blak, Medical Evaluation, 1/20/2013, Pg. Four)

s.   On January 22nd, 2013, Deputy Randall Watkins authored a second supplemental report to

Patterson Police Report # P12009957 in regards to Stanislaus DDA Dave Harris' request for

clarifications of Watkins observations concerning the December 3rd, 2012 arrest of plaintiff.

t.   On January 28th, 2013 a competency trial was held over the objection of plaintiff in Merced

County Superior Court Cases CRL001412 and CRL003409 whereat Dr. Blak was questioned by

Merced County DDA Alan Turner and plaintiff's attorney Eric Dumars concerning plaintiff's

arrest of December 3rd, 2012. (01/28/2013, CT, CRL001412, Pgs. 56-59 and Pg. 75)

u.   On January 28th, 2013 plaintiff was declared suffering from a severe mental delusional disorder

of the grandiose and persecutory type and unable to aid his defense counsel.  The criminal cases

were dismissed immediately over plaintiff's objection without a competency restoration

program ordered.  (130128-MINUTE-ORDER-on-Competency-Trial-and-Dismissal,

CRL001412)

v.   On February 4th, 2013 Stanislaus County DA Birgit Fladager rejected filing any charges against

plaintiff based upon the Patterson Police Report # P12009957 filed by defendant Deputy

Schwartz.

w.   On April 4th, 2013 the Patterson PD Police Report # P12009957 with the supplemental of

Deputy Watkins was released to Lt. Grom/Stanislaus County SO printed by J. RASCHEL.

***Undisputed Facts According to Defendant:***

a.   On December 3, 2012, defendant Timothy Schwartz was on duty as a Stanislaus County

Sheriff's Office deputy, assigned to patrol Patterson, CA.  At approximately 8:29 p.m. he was

flagged down by plaintiff.  After an interaction between plaintiff and defendant, which was

videotaped by plaintiff's wife, defendant took plaintiff into custody, arresting him on charges of

violating PC 71, threatening a public employee, and PC 148(a)(1),  resisting, obstructing and delaying an officer in the performance of his duties.

b. Defendant transported plaintiff to Doctors Medical Center in Modesto.  He was cleared for booking and taken to the Stanislaus County jail where he was booked.

**F.**     **DISPUTED FACTUAL ISSUES**

According to Plaintiff:

A. Defendant did not have probable cause for the arrest and the arrest was unlawful.  Forte's reply to Schwartz's statement was "What would you like me to do, get a gun and shoot you guys? I'm certainly not going to do that."

B.  Defendant arrested plaintiff in retaliation and to punish due to his animus of Forte writing articles in his Badger Flats Gazette critical of Merced County and Stanislaus County law enforcement.

C. Defendant arrested plaintiff in an effort to aid a conspiracy by Merced County DDA Alan Turner, Merced County Public Defender, Eric Dumars to have Forte declared mentally incompetent at the competency hearing of January 28th, 2013 in the Merced County criminal case of *State vs. Forte*, CRL001412, so that any allegations of wrong doing made by Forte against the culpable public official state actors would be discredited.

D. Defendant filed a false felony police report and his animus and lack of probable cause for Forte's arrest under PC 71 is displayed by Schwartz not including in the report Schwartz's question to Forte, "Why do you keep on coming back to us if we're your problem?" which prompted Forte's reply "What would you like me to do, get a gun and shoot you guys?  I'm certainly not going to do that."  Forte was arrested for threatening the officers, in violation of California Penal Code § 71. That provision may be violated by attempting to deter executive officers from their duties by "threat or violence." CAL. PENAL CODE § 71.  To assure that the

statute does not violate the First Amendment by sanctioning constitutionally protected challenges to police officers' activities, see *City of Houston, Tex. v. Hill*, 482 U.S. 451, 462-63 (1987), California courts adopted a narrowing construction. Under that construction, adopted as early as 1984, the statute's "threat" provision is applicable only to "threat[s] of unlawful violence used in an attempt to deter an officer." In re Manuel G., 16 Cal. 4th 805, 814-15 (1997); see also Anderson, 151 Cal. App. 3d 893, 895-96, 898 (Ct. App. 1984) (same).  As a result of this limiting construction, the threats that have been held to violate § 69 have been unmistakably threats of violence, including " 'Me and my home boys are going to start killing you and your friends,' " In re Manuel G, 16 Cal. 4th at 819; " 'I'm tired of you guys fucking with us, and you better watch out, we're going to start knocking you guys off,' " id.; " 'We'll get your house. We'll get your cars. You can't be with your family twenty-four hours a day,' " *In re M.L.B.*, 110 Cal. App. 3d at 504; and " 'I am going to kill you. This is a threat. You're dead.' " *People v. Hines*, 15 Cal. 4th 997, 1058 (1997).  Forte's statement bears scant resemblance to those that have been held to violate § 71.

E.  Defendant filed a false felony police report displaying his animus in arresting Forte by inaccurately stating that Forte in essence said, "Do I have to say I'm going to get a gun and shoot you in order to get some service?" which is not the essence of what Forte said.

F.  Defendant filed a false felony report displaying his animus by stating, "I again stepped out my patrol, instructed Eugene Forte to turn around, and asked for him to put his hands behind his back".  The cell phone video of the arrest shows that the defendant gave no such instruction to Forte.

G.  Schwartz used excessive force during the arrest.

H.  Schwartz was attempting to take away Forte's audio recorder because he was operating under the "protocols" of Chief Tori Hughes that Patterson PD Officers would not permit any

conversations with Patterson PD officers be recorded by Forte in violation of his First Amendment Constitutional Right.

I.   The police report #P12009957 by Schwartz was not written solely by Schwartz but was authored and altered with the input from Merced County DDA Alan Turner with Stanislaus DDA Dave Harris, Merced County Counsels James Fincher and Roger Matzkind and Eric Dumars along with Stanislaus County Counsels in an effort to diffuse potential liability of the false arrest of plaintiff by Schwartz and to aid having Forte to be declared mentally incompetent on January 28th, 2013 based upon the December 3rd, 2012 arrest referred to in the 1/20/2013 Mental Evaluation of Dr. Richard Blak and discussed at the competency trial by Blak, Dumars, and Turner.  Forte attempted to obtain a copy of the police report as early as December 12th, 2012 but never received a copy of such report until March 5th, 2013.  Plaintiff submits that the report was not available because it was being fabricated by defendant and parties yet unknown, but suspected to be DDA Alan Turner, Merced County Counsels Roger R. Matzkind, DDA Dave Harris and Eric Dumars, from the January 20th, 2013 ME of Dr. Richard A. Blak.

J.   The police report intentionally left out Schwartz's question which prompted Forte's reply and reported the crime as a potential felony, rather than as a misdemeanor, suggesting that it was written to cast Forte in the worst possible light.  The facts in this case resemble those in *Duran*, in which a police officer stopped and arrested a man who first "exchanged a few heated words" with him and who then made obscene gestures at him just before the arrest. 904 F.2d at 1374-75. In that case, it was first held that probable cause for the stop was absent and then warned that it appeared that the officer stopped the plaintiff "at least partly in retaliation for the insult he received" from him. Id. at 1377 78. Forte's showing of a heated personal confrontation followed by a hasty arrest likewise could rationally support a finding of retaliatory animus.  Even if the above  theory based on personal retaliatory animus was not adopted, a rational jury could find

that the arrest was the culmination of Forte's writing of articles in his Badger Flats Gazette that Schwartz did not like, and over Forte's efforts to expose in his Badger Flats Gazette that he was the victim of retaliatory prosecution by Merced County officials and was being declared mentally incompetent as a ruse by Merced County officials to conceal their false arrest and prosecution of Forte.  Forte has presented and can present a substantial case that his protected First Amendment writing in his Badger Flats Gazette created the tensions that led to his arrest.

K. The police report PD Report #P12009957 is prima facie evidence that previously dismissed defendant Chief Tori Hughes established "Protocols were that circumstances needed to be reviewed for potential deputy response, given a crime had actually been committed within Stanislaus County. This was in response to the prior excessive, non-emergency, and out-of-jurisdiction nature of Forte's prior contacts" (PD Report #P12009957, Pg. 4) which "set in motion a series of acts by others, or knowingly refused to terminate a series of acts by others, which he (she) knew or reasonably should have known, would cause others to inflict the constitutional injury." *Larez v. City of Los Angeles*, 946 F.2d 630, 646 (9th Cir. 1991).  Hughes approved Schwartz's investigation of the incident and told him to present it to the prosecutor. It should have been clear to Hughes from the start that there was no probable cause to arrest Forte.

L. Forte alleges that Schwartz acted maliciously due to his animus of Forte's protected speech reporting upon judicial, public and police misconduct.  Under California law, "[m]alice may be determined by taking into account all circumstances surrounding the arrest allegedly known to the arresting officer." *McKay v. County of San Diego*, 111 Cal. App. 3d 251, 254 (Ct. App. 1980). Malice "may be proved by circumstantial evidence, and is defined as that attitude or state of mind which actuates the doing of an act for some improper or wrongful motive or purpose. It does not necessarily require that the defendant be angry or vindictive or bear any actual hostility or ill will toward the plaintiff." *Laible v. Superior Court of the City and County of San*

9

*Francisco*, 157 Cal. App. 3d 44, 53 (Ct. App. 1984) (quotation marks omitted). Moreover, liability for an unlawful arrest extends beyond the arresting officer if immunity is not present: "A party who authorizes, encourages, directs or assists an officer to do an unlawful act, or procures an unlawful arrest, without process, or participates in the unlawful arrest or imprisonment is liable." *Harden v. San Francisco Bay Area Rapid Transit District*, 215 Cal. App. 3d 7, 15 (Ct. App. 1989) (internal alterations and quotation marks omitted).  Applying these concepts, both Deputy Schwartz and Chief Hughes may be held liable for false arrest under California law if they acted maliciously. The evidence of retaliatory intent is sufficient to allow a rational jury to find that both the officers "acted for some improper or wrongful motive or purpose." *Laible*, 157 Cal. App. 3d at 53; see also id. at 54 ("It is for the trier of fact . . . to weigh the available inferences against [the officers'] profession of pure motives."). They are thus not immune under § 43.55(a).

M.  Regarding the First Amendment cause of action: Arresting someone in retaliation for their exercise of free speech rights was violative of law clearly established at the time of Forte's arrest.   By 1990, it was "well established . . . that government officials in general, and police officers in particular, may not exercise their authority for personal motives, particularly in response to real or perceived slights to their dignity. Surely anyone who takes an oath of office knows — or should know — that much." *Duran*, 904 F.2d at 1378; see also id. ("[W]hile police, no less than anyone else, may resent having obscene words and gestures directed at them, they may not exercise the awesome power at their disposal to punish individuals for conduct that is not merely lawful, but protected by the First Amendment."); *United States v. Poocha*, 259 F.3d 1077, 1080 (9th Cir. 2001) ("The Supreme Court has consistently held that the First Amendment protects verbal criticism, challenges, and profanity directed at police officers unless the speech is likely to 'produce a clear and present danger of a serious

substantive evil.' ") (quoting *Hill*, 482 U.S. at 461); *Guilford v. Pierce County*, 136 F.3d 1345, 1349 (9th Cir. 1998) (same); *MacKinney v. Nielsen*, 69 F.3d 1002, 1007 (9th Cir. 1995) (citing *Duran* for the proposition that there is a clearly established "First Amendment right to challenge the police. Even when crass and inarticulate, verbal challenges to the police are protected.").

N. Regarding the Fourth Amendment cause of action: As we have discussed, the California courts limited § 69 (analogous to PC71) "threat" violations to threats of violence as early as 1984 . The California Supreme Court ratified that interpretation in 1997, fifteen years before Forte's arrest in 2012. *See In re Manuel G.*, 16 Cal. 4th at 814-15. The arrest was therefore in violation of clearly established law at the time it occurred, as it was without probable cause under then-existing California law.  In short, well before 2012, "a reasonable official [in Deputy Schwartz's and Chief Hughes position] would understand" that arresting an individual in retaliation for protected speech is constitutionally impermissible. *See Saucier*, 533 U.S. at 202. Such officers would also have known that the criminal complaints were objectively unsupported by probable cause. Deputy Schwartz and Chief Hughes therefore may not claim qualified immunity from liability resulting from the criminal complaint they filed.

O. Chief Hughes position is slightly different: She did not sign or prepare the police report. However, a supervising official may be liable in his individual capacity if he "set in motion a series of acts by others, or knowingly refused to terminate a series of acts by others, which he knew or reasonably should have known, would cause others to inflict the constitutional injury." *Larez v. City of Los Angeles*, 946 F.2d 630, 646 (9th Cir. 1991) (internal alterations omitted). Hughes was one of Forte's purported victims according to PC 71. She approved Schwartz's investigation of the incident and told him to present it to the prosecutor. It should have been clear to Hughes from the start that there was no probable cause to arrest Forte. Yet, she failed to

do anything to stop the process that led to the arrest, but instead abetted it by putting "protocols" in place to violate Forte's constitutional rights of free speech that led to his arrest. She may not claim qualified immunity here.

According to Defendant:   Defendant's arrest of plaintiff was proper. Defendant's use of force was reasonable under the circumstances.

## G.    DISPUTED EVIDENTIARY ISSUES

Plaintiff:  Plaintiff attempted to meet and confer with opposing counsel on evidentiary issues so that the court could be made aware of what evidentiary issues would be in dispute. Farrar was reluctant to discuss the issue and plaintiff submits that Farrar may not be familiar with the facts of the case due to Farrar only conducting minimal discovery.

The following are areas where plaintiff anticipates disputes:

a.  Plaintiff informed counsel Farrar the reasons as to why he felt the transcript of the January 28th, 2013 competency hearing of plaintiff in CRL001412, *State vs. Forte*, the live testimony of Eric Dumars, DDA Alan Turner, DDA Dave Harris and Dr. Richard Blak are relevant to this action.

b.  Articles written by plaintiff in his Badger Flats Gazette, prior to December 3rd, 2012 and after the arrest of December 3rd, 2012 discussing the Patterson PD, Schwartz, Deputy Randall Watkins, Chief Tori Hughes, etc..

c.  Merced Sun-Star articles about Eric Dumars attempted suicide and forced resignation as public defender based upon the report of Sutton-Hattmaker.

d.  The outcome of *Forte v. Jones*, 1:13-0718-AWI-BAM wherein Forte representing himself in an 8 day jury obtained a unanimous jury verdict with punitive damages proving that he was maliciously retaliated against by Mayor Jones for exposing his corruption in the Badger Flats Gazette and while Forte was allegedly still incompetent to aid his attorney due to his delusional beliefs that Jones was doing so.

e.  The Medical Evaluation of Dr. Richard A. Blak.

f.  DDA Harris' investigative files on the December 3rd, 2012 arrest culminating in their decision not to file charges.

Defendant:  Unknown at this time.  Defendant does not anticipate any issues with evidence he introduces but may take issue with evidence plaintiff presents.  Defendant will address material evidentiary issues via motions in limine.

**H.      RELIEF SOUGHT**

*Plaintiff's Statement*:

Plaintiff is 64 years old and sustained bruises and lacerations, strains to his body, extreme pain, injury to his wrists, anxiety, prolonged and continued symptoms of PTSD and elevated stress to his heart which further worsened and weakened his heart that he had already had open heart surgery performed on in 2004.  Plaintiff incurred $3,041.00 in medical expenses, $1,200.00 in ambulance costs and the cost of a $20,000.00 bail.  Plaintiff believes to have suffered pain and humiliation to his character by articles published about his arrest in the Patterson Irrigator and other publications.  Plaintiff incurred damages contributed to defendants acts which were used to unjustly have him declared mentally incompetent in the case of *State v. Forte*, CRL001412 and be fined $9,333.00 in legal fees.  Plaintiff's income prior to his December 2012 arrest ($34,000.00 approx.) does not accurately reflect plaintiff's earning power in that it had already been greatly diminished by the tortious acts of Merced County officials meritless prosecution of  misdemeanors that spanned four years used as a club to thwart the prosecutions of *Forte v. Merced County*, 1:11-00318-AWI-BAM.  Forte's last year of income that was not affected by the onslaught of an attack by public officials in 2000 was approximately $575,000.00.  Plaintiff believes that he has lost approximately $500,000.00 a year from needing to devote his time to litigating the violation of his civil rights to protect him and his families' good name.  Plaintiff asserts that he estimates the future expense of treatment of his stress, anxiety, and worsened heart condition caused by defendant to be $50,000.00 annually.  Plaintiff believes his general

damages to be $1,000,000.00 and his punitive damages to be $5,000,000.00 or what is determined by the jury at court.

**Defendants' Statement:**

Defendant has not indicated the relief he seeks.

# I.    POINTS OF LAW

**Plaintiff's Statement:**

First Amendment Claim

Plaintiff's claims are analogous to the claims made in *KENNETH BECK vs. CITY OF UPLAND; CITY OF UPLAND POLICE DEPARTMENT;*, et al., D.C. NO. CV-05-00184-ABC brought under 42 U.S.C. § 1983 for constitutional violations and for various state law causes of action against the City of Upland, its police department, and the officers who engineered his arrest, Police Chief Martin Thouvenell and Sergeant Jeff Mendenhall.

A claim under § 1983 requires proof by a preponderance of the evidence that a defendant acted under color of law and proof that defendants' acts deprived the plaintiff of a particular right under the United States Constitution. *Beck v. Ohio*, (1964)379 U.S. 89, 90-91, 85 S.Ct. 223, 225-226, 13 L.Ed.2d 142.

Under the First Amendment to the United States Constitution, a citizen has the right to be free from governmental action taken to retaliate against the citizen's exercise of First Amendment rights or to deter the citizen from exercising those rights in the future. *Sloman v. Tadlock*, 21 F.3d 1462, 1469–70 (9th Cir.1994). "Although officials may constitutionally impose time, place, and manner restrictions on political expression carried out on sidewalks and median strips, they may not 'discriminate in the regulation of expression on the basis of content of that expression.' . . .' State action designed to retaliate against and chill political expression strikes at the very heart of the First Amendment.' " Id. (citations omitted).

Thus, in order to demonstrate a First Amendment violation, a citizen plaintiff must prove by a preponderance of evidence that "by his actions [the defendant] deterred or chilled [the plaintiff's] political speech and such deterrence was a substantial or motivating factor in [the defendant's] conduct." Id. (quoting *Mendocino Env'l Ctr. v. Mendocino County*, 14 F.3d 457, 459–60 (9th Cir.1994). A plaintiff need not prove, however, that "his speech was actually inhibited or suppressed." *Mendocino Env'l Center v. Mendocino County*, 192 F.3d 1283, 1288 (9th Cir.1999). See also *Awabdy v. City of Adelanto*, 368 F.3d 1062, 1071 (9th Cir.2004).

There is a clearly established law entitling citizens to record officers and/or report what they believe to be crimes against them and that a reasonable officer would not have believed it was lawful conduct to prevent a citizen from doing such in public as Forte was doing on the night of December 3rd, 2012 when he was arrested.

In civil rights cases, courts have created the rule of qualified immunity to insure "public officials' elective performance of their duties" by making it possible for them to reasonably anticipate when their conduct may give rise to liability for damages. *Anderson v. Creighton* (1987) 483 U.S. 635. Whether a government official "is entitled to qualified immunity turns on a two part inquiry: '(1) Was the law governing the official's conduct clearly established? (2) Under that law, could a reasonable officer have believed the conduct was lawful?'" *Harlow v. Fitzgerald* (1982) 457 U.S. 800, 812; *MacKinney v. Nielsen* (9th Cir. 1995) 69 F.3d 1002, 1005 (quoting Act Up! *Portland v. Bagley* (9th Cir. 1993) 988  F.2d 868, 871); *Brady v. Gebbie* (9th Cir. 1988) 859 F.2d 1543, 1555.  Schwartz is not entitled to qualified immunity.

The contours of the right alleged to have been violated "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson, supra at 640; Brady, supra at 1556. "This does not mean that any official action is protected by qualified immunity 'unless the very action in question has previously been held unlawful,' but it does require that 'in the

1    light of pre-existing law the unlawfulness must be apparent.'" *Mendoza v. Block* (9th Cir. 1994) 27

2    F.3d 1357 (quoting Anderson, supra at 640). Courts have also noted the danger in defining rights too

3    narrowly, as doing so would be to allow defendants "to define away all potential claims." *Kelley v.*

4    *Borg* (9th Cir. 1995) 60 F.3d 664, 667. "An officer is not entitled to qualified immunity on the grounds

5    that the law is not clearly established every time a novel method is used to inflict injury." *Mendoza*,

6    supra at 1360.

7

8           Punitive Damages

9           In *Smith v. Wade*, the Supreme Court held that Section 1983 authorizes the award of punitive

10   damages against state or local officials in their individual capacity./24/ The Court suggested that

11   punitive damages may be awarded when an official's conduct is malicious, intentional, or recklessly or

12   callously indifferent to protected rights./25/ This test focuses on the state of mind of the defendant./26/

13   While outrageous or egregious conduct may provide evidence of the requisite state of mind, the

14   conduct need not be egregious or outrageous to justify an award of punitive damages./27/ The

15   determination of whether to award punitive damages once a showing of malicious or recklessly

16   indifferent conduct is made rests within the discretion of the jury or judge (in a jury-waived case)./28/

17   When jury instructions properly require the plaintiff to prove reckless or callously indifferent conduct,

18   they need not require a finding of "outrageous" or "extraordinary" conduct at the same time./29 /

19           Courts repeatedly have upheld punitive damage awards against public officials for

20   discriminatory employment practices,/30/ police brutality,/31/ and unlawful searches and seizures./32/

21   Courts have also upheld awards for prisoner mistreatment,/33/ including deliberate indifference to

22   medical needs,/34/ violations of the right to procedural due process,/35/ and violations of First

23   Amendment rights./36/ Punitive damages may be awarded even when the plaintiff suffers only nominal

24   damages from a deprivation of federal rights./37/ However, if a punitive damage award is "grossly

25

26

27

28

excessive" in relationship to the state's legitimate interest in punishing and deterring unlawful conduct, it runs afoul of substantive due process and may be reduced or reversed on appeal./38/

### Defendant's Statement

Defendant's arrest of plaintiff was constitutionally appropriate if defendant had probable cause to believe plaintiff committed a criminal offense in his presence. *United States v. Jensen*, 425 F.3d 698, 704 (9th Cir. 2005). The reasonableness of force used during the arrest depends upon defendant's intentions (*Brower v. Cnty. of Inyo*, 489 U.S. 593, 597, 109 (1989)) and the nature (type and force) of the force used. *Deorle v. Rutherford*, 272 F.3d 1272, 1279 (9th Cir.2001.)

**J.   ABANDONED ISSUES**

The parties did not identify any abandoned issues.

**K.   WITNESSES**

The parties intend to call the following witnesses to testify at trial:

Plaintiff:

a.   Eugene Forte, 3808 Columbine Dr., Modesto, CA 95356, 209-622-0685

b.   Eileen Forte, 3808 Columbine Dr., Modesto, CA 95356, 209-622-0685

c.   Randall Watkins, 33. S. Del Puerto Ave., Patterson, CA 95363, Ph: 209-892-5071

d.   Tori Hughes, 33. S. Del Puerto Ave., Patterson, CA 95363, Ph: 209-892-5071

e.   Mr. Eric Dumars, 21 W Alisal Ste. 122, Salinas, CA 93901, Phone:  209-617-2904

f.   Dr. Richard A. Blak, 7341 N 1st St, Ste 110, Fresno, CA 93720, Phone:  559-431-8893

g.   Fresno FBI Agent Robinson, P.O. Box 578712, Fresno, CA 95357, Phone:  559- 436-4474

h.   Luke Schwartz, 33. S. Del Puerto Ave., Patterson, CA 95363, Ph: 209-892-5071

i.   Stanislaus County Sheriff Custodian of Records

j.   Patterson Police Services, Custodian of Records, 33. S. Del Puerto Ave., Patterson, CA 95363, Ph: 209-892-5071

k.  Lt. Grom / Stanislaus County SO

l.  Warren Yates, P.O. Box 578712, Modesto, CA 95357, Phone:  209-572-4599

m.  Birgit Fladager, Stanislaus DA's Office

n.  Dave Harris, Investigating DDA

o.  Larry Cole, 2401 Orangeburg Avenue, PMB 2203, Modesto, CA, 95355, 209-549-9100

p.  Kay Gordon, 1441 Florida Ave, Modesto, CA 95350, Phone: (209) 578-1211

q.  Michael Andriese, 33. S. Del Puerto Ave., Patterson, CA 95363, Ph: 209-892-5071

r.  Patterson PD Officer Sergeant Walker, 33. S. Del Puerto Ave., Patterson, CA 95363, Ph: 209-892-5071

s.  Dr. Robert Moody, 615 13th Street, Suite B, Modesto, CA.,  (209) 872-0331

t.  Louvres Bettancourt, Golden Valley Medical Health Services,  200 C St, Patterson, CA 95363 (209) 892-6307.

u.  Mr. Alan Turner, Merced County, DDA.

v.  Mr. James Fincher, Merced County Counsel, Merced, Ca.

w.  Maria Godinez, 33. S. Del Puerto Ave., Patterson, CA 95363, Ph: 209-892-5071

Plaintiff will make his best efforts to obtain the addresses and phone numbers of all witnesses and provide them to Farrar as obtained.

Defendant:   Defendant will not call any witnesses not listed above by plaintiff.

## L.    **TRIAL EXHIBITS**

Plaintiff:    Plaintiff will use as exhibits all Stanislaus and Merced County law enforcement agency reports and/or investigations concerning Gene Forte and/or the subject incident, and any interactions or reporting of incidents to law enforcement agencies in Stanislaus County by Gene Forte, all radio and dispatch traffic concerning the subject incident, booking information, and the audio and video recordings taken by plaintiff and his wife concerning the subject incident.  Plaintiff will also use all

audio or recordings of defendant and/or witnesses to refresh recollection and/or for impeachment purposes. See attached list Exhibit 1for list of exhibits that plaintiff requests to supplement if necessary with permission of the court.

Defendant:  Defendant will use as exhibits all law enforcement agency reports concerning the subject incident, all radio and dispatch traffic concerning the subject incident, booking information, and the audio and video recordings taken by plaintiff and his wife concerning the subject incident.

### 1.  Duty to Pre-Mark Exhibits

No later than **January 17, 2017,** the parties **SHALL** exchange their proposed exhibits to the extent they have not done so. The parties **SHALL** meet and conduct an exhibit conference no later than **January 23, 2017** to pre-mark and examine trial exhibits and to prepare exhibit lists, to the extent they have not done so already. All joint exhibits (i.e., any documents which the parties agree will be **admitted into evidence for all purposes**) **SHALL** be pre-marked with the prefix "J" and numbered sequentially starting with J-1. All of Plaintiff's exhibits (not jointly agreed upon) **SHALL** be pre-marked with the prefix "P" and numbered sequentially starting with P-1. All defense exhibits (not jointly agreed upon) **SHALL** be pre-marked with the prefix "D" and numbered sequentially starting with D-100.

### 2.  Exhibit Lists

No later than **January 27, 2017**, the parties **SHALL** file and serve their final lists of respective pre-marked exhibits. Only those exhibits that are identified in the parties' joint pretrial statement may appear on the final exhibit list.  **Further, no exhibit, other than those listed in the final exhibit list, may be admitted at trial unless the parties stipulate or upon a showing that this order should be modified to prevent "manifest injustice."** Fed. R. Civ. P. 16(e).

### 3.  Submission of Trial Exhibits

No later than **January 27, 2017**, the parties **SHALL** submit to the clerk's office all pre-marked trial exhibits. The parties' counsel should note that, pursuant to Local Rule 281(b)(11), only those exhibits listed in the parties' pretrial statement will be permitted to be offered into evidence. Therefore,

any exhibits submitted which are not listed in the pretrial statement will not be admitted without a showing of good cause or the parties' stipulation.

### 4. Handling Trial Exhibits

The parties do not anticipate that any special handling of trial exhibits will be necessary.

### 5. Objections

This Court will address objections to exhibits as they arise during trial.

### 6. Discovery Documents

*Plaintiff's Statement:*

Plaintiff does not anticipate presenting any discovery documents at trial.

*Defendant's Statement:*

Defendant will use the deposition transcripts of plaintiff and his wife as appropriate for cross-examination.

### 7. Deposition Testimony

The parties have not indicated that they intend to introduce deposition testimony. Nevertheless, should the parties file deposition testimony, such testimony **SHALL** be designated by page and line number, with such designation to be filed and served no later than **January 20, 2017**. Any counter-designation as to the same deposition (also set out by page and line number) **SHALL** be filed and served no later than **January 27, 2017**. The original certified transcript of any deposition identified in a designation or counter-designation **SHALL** be lodged with the clerk's office no later than **January 27, 2017**, if not previously lodged with the Court.

This Court will address objections to deposition testimony as they arise during trial.

### 8. Duty of the Parties' Counsel

During the course of trial, counsel **SHALL** meet with the Court each morning to advise as to which items of evidence will be used that day and which have not already been admitted into evidence. The Court will rule on any objections to the extent possible prior to the commencement of trial each day out of the presence of the jury. If such ruling depends on the receipt of testimony or other evidence, the Court will rule as appropriate upon the receipt of such testimony or evidence. If counsel anticipates

evidentiary problems, they are required to notify the Court immediately that a hearing outside the jury's presence will be required. During the time set for conducting the trial before the jury, the Court will not hear argument outside the jury's presence on such matters.

### 9. Post-Trial Exhibit Retention

Counsel who introduced exhibits at trial **SHALL** retrieve the original exhibits from the courtroom deputy following the verdict in the case. The parties' counsel **SHALL** retain possession of and keep safe all exhibits until final judgment and all appeals are exhausted.

## M. TRIAL BRIEFS

Although trial briefs are not required, if they are filed, they **SHALL** be filed and served no later than **January 27, 2017** and otherwise pursuant to this Court's Local Rule 285.

## N. MOTIONS *IN LIMINE*

At the pretrial conference, the parties indicated that they do not anticipate filing pretrial motions. Should either party decide to file a motion *in limine*, the Court **ORDERS** that the parties' counsel meet and confer on anticipated motions *in limine* and to distill evidentiary issues. This Court further **ORDERS** the parties to file motions *in limine* as to only important, critical matters, keeping in mind that most evidentiary issues can be resolved easily with a conference among the Court and counsel. If this Court surmises that the parties have filed motions *in limine* without meaningful, genuine meeting and conferring, this Court will strike the motions *in limine* and not hear them.

The parties, after meaningful and genuine meet and confer efforts, **SHALL** file and serve their truly disputed motions *in limine* no later than **January 4, 2017**. Any response to motions *in limine* **SHALL** be filed no later than **January 11, 2017**. This Court will conduct a hearing on the motions *in limine* on **January 30, 2017 at 1:30 p.m.** in Department 4 (LJO) of this Court, unless this Court decides to rule on the motions *in limine* on the record. **Moving and opposition papers must be brief, succinct, and well-organized.** The Court encourages each party to consolidate their respective motions *in limine* **in a single document**, organized by number, and to file oppositions **in a single document** responding to the numbered issues under the same corresponding headers. For example, if a defendant has five evidentiary issues, it would file one motion that has five headers: Motion *in limine* No. 1;

21

Motion *in limine* No. 2, and so on; and, in response, plaintiffs would file one opposition document organized in the same way. Said another way, in order to maintain a well-organized docket in preparation for trial, the Court discourages parties from filing multiple motions *in limine* in a string of separate docket entries.

**O.   FURTHER DISCOVERY OR MOTIONS**

Plaintiff anticipates filing a number of pre-trial motions beyond motions *in limine*. Plaintiff's anticipated motion to disqualify the undersigned must be filed no later than **December 27, 2016.** Defendant may file a response on or before **January 3, 2017.** Any other pre-trial motion must be filed no later than **January 4, 2017**. Any response to any pre-trial motion must be filed no later than **January 11, 2017**. If necessary, the Court will hold a hearing on all pre-trial motions, including motions *in limine*, on **January 30, 2017, at 1:30 p.m.** in Department 4 (LJO) of this Court, unless the Court decides to rule on the motions on the record**.**

**P.   JOINT STATEMENT OF THE CASE**

The parties have not provided a joint statement of the case. At the pretrial conference, the Court encouraged the parties to work together and submit a joint, neutral statement of the case. The parties must file this statement no later than **January 10, 2017**.

**Q.   AMENDMENTS-DISMISSALS**

Plaintiff has indicated he intends to move to amend the pleadings. Any such motion shall be filed no later than **January 4, 2017**.

**R.   SETTLEMENT NEGOTIATIONS**

The parties attended a settlement conference before Magistrate Judge Sandra M. Snyder on March 2, 2016. The case did not settle. At the pretrial conference, the parties indicated that they intend to go to trial, and that further settlement negotiations would not be helpful.

**S.   AGREED STATEMENT OF FACTS**

The parties do not believe that the presentation of all or part of this case upon an Agreed Statement of Facts is feasible. The parties **SHALL** submit a neutral statement of the case no later than

**January 10, 2017**. If the parties do not submit one, the Court will write one and the parties will be bound by it.

**T.      PROPOSED JURY *VOIR DIRE***

The parties **SHALL** file and serve any proposed jury *voir dire* no later than **January 27, 2017**.

**U.      PROPOSED JURY INSTRUCTIONS AND VERDICT FORMS**

The parties **SHALL** serve their proposed jury instructions and verdict forms on one another no later than **January 17, 2017**. The parties **SHALL** conduct a conference to address their proposed jury instructions and verdict forms no later than **January 23, 2017.** At the conference, the parties **SHALL** reach agreement on jury instructions and a verdict form for use at trial. The parties, no later than **January 27, 2017**, **SHALL** file and serve all agreed-on jury instructions and an agreed-on verdict form and identify such as the agreed-on jury instructions and verdict form.

No later than **January 27, 2017**, Plaintiff *may* file and serve no more than ten proposed jury instructions and identify such as jury instructions upon which the parties could not agree. No later than **January 27, 2017**, Defendant *may* file and serve up to ten  proposed jury instructions and identify such as jury instructions upon which the parties could not agree. **Without a prior order, this Court will not consider additional proposed jury instructions past the first ten.**

This Court expects and specifically orders the parties to file an agreed-on special verdict form no later than **January 27, 2017**. If a party seeks additions to an agreed-on verdict form, that party may file and serve, no later than **January 27, 2017**, a proposed verdict form which includes the agreed-on portions and the additions which are clearly indicated on that party's proposed verdict form. This Court will strike and will not accept separately proposed verdict forms upon which the parties do not agree.

All jury instructions **SHALL** indicate the party submitting the instruction (i.e., joint/agreed-on, Plaintiff's or Defendant's), the number of the proposed instruction in sequence, a brief title for the instruction describing the subject matter, the text of the instruction, and the legal authority supporting the instruction.

All jury instructions and verdict forms **SHALL** be e-mailed as a Microsoft Word attachment to **(1) ljoorders@caed.uscourts.gov  and  (2)  lcoffman@caed.uscourts.gov** no later than **January 27,**

**2017. <u>Jury instructions and verdict forms will not be given or used unless they are so e-mailed to the Court.</u> The Court will not accept a mere list of numbers of form instructions from the Ninth Circuit Model Jury Instructions, CACI, BAJI or other instruction forms. The proposed jury instructions must be in the form and sequence which the parties desire to be given to the jury. All blanks to form instructions must be completed. Irrelevant or unnecessary portions of form instructions must be omitted.**

Ninth Circuit Model Jury Instructions **SHALL** be used where the subject of the instruction is covered by a model instruction. Otherwise CACI or BAJI instructions **SHALL** be used where the subject of the instruction is covered by CACI or BAJI. **All instructions SHALL be short, concise, understandable, and neutral and accurate statements of the law. Argumentative or formula instructions will not be given and must not be submitted.** Quotations from legal authorities without reference to the issues at hand are unacceptable.

The parties **SHALL**, by *italics* or <u>underlining</u>, designate any modification of instructions from statutory or case authority, or any pattern instruction, such as the Ninth Circuit Model Jury Instructions, CACI, BAJI or any other source of pattern instructions, and must specifically state the modification made to the original form instruction and the legal authority supporting the modification.

No later than **January 27, 2017**, the parties may file and serve meaningful written objections to disputed jury instructions proposed by another party. All objections **SHALL** be in writing, **SHALL** set forth the proposed instruction objected to in its entirety, **SHALL** specifically set forth the objectionable matter in the proposed instruction, and **SHALL** include a citation to legal authority to explain the grounds for the objection and why the instruction is improper. A concise argument concerning the instruction may be included. Where applicable, the objecting party **SHALL** submit an alternative proposed instruction covering the subject or issue of law.

**V.      <u>SEPARATE TRIAL OF ISSUES</u>**

The parties dispute whether a bifurcated second phase to the trial should be held on the issue of punitive damages, if in the first phase the jury finds malice by Defendant. The Court finds bifurcation is

appropriate. There shall be no mention of these types of damages until and unless the jury makes the required factual findings, and the case proceeds to the second phase of the trial.

**W.   IMPARTIAL EXPERTS – LIMITATION OF EXPERTS**

Plaintiff will not call any expert witnesses. Defendant may call himself to offer expert opinion testimony.

**X.   ATTORNEY FEES**

*Plaintiff's Statement:*

To be proven at trial.

*Defendants' Statement:*

Defendant did not submit a statement concerning attorney fees.

**Y.   CLAIMS OF PRIVILEGE**

The parties do not claim any privilege against disclosure in this matter.

**Z.   COMPLIANCE WITH THIS ORDER**

Strict compliance with this order and its requirements is mandatory. This Court will strictly enforce the requirements of this pretrial order, especially those pertaining to pre-trial motions, jury instructions and a verdict form. Counsel and parties are subject to sanctions for failure to fully comply with this order and its requirements. This Court will modify this order "only to prevent manifest injustice." Fed. R. Civ. P. 16(e).

IT IS SO ORDERED.

Dated:   **December 21, 2016**              **/s/ Lawrence J. O'Neill**
                                      UNITED STATES CHIEF DISTRICT JUDGE